**Ex parte Larry Douglas WELCH, Applicant.**

**Nos. 05–86–01152–CR, 05–86–01153–CR.**

Court of Appeals of Texas, Dallas.

Jan. 6, 1987.

Bruce Anton, Dallas, for appellant.

Roger V. Dickey, Dallas, for appellee.

Before GUITTARD C.J., and HOWELL and ROWE, JJ.

HOWELL, Justice.

Larry Douglas Welch appeals from an order denying his applications for writs of habeas corpus to reduce the $150,000 bail presently set in each of his two pending solicitation of capital murder cases. He contends in a single point of error that the trial court abused its discretion by refusing to lower this amount. His counsel additionally urged at oral argument that the State failed to present evidence establishing probable cause for his continued detention. For the reasons discussed below, we affirm the decision of the trial court.

Applicant did not testify at the bail reduction hearing, but offered instead the testimony of several relatives, his employer, and a family friend. These witnesses discussed applicant's life-long family and community ties to Collin County, where the charges are pending. Applicant has worked there as a superintendent for a custom home builder for approximately two years. Each of these witnesses voiced confidence that applicant will appear for trial.

Portions of the testimony elicited from these witnesses revealed a history of domestic violence between applicant and his wife, Oleta Welch. The couple separated "this last time" in May or June, 1986; Oleta has filed for a divorce. The record discloses virtually nothing of what occurred from the filing of the divorce petition until applicant's alleged acts of solicitation. It is undisputed, however, that sometime during this period applicant was indicted for an aggravated assault against his wife, and that he was out of jail on bond when he allegedly committed the two solicitation offenses.

The first solicitation indictment alleges that on August 27, 1986, applicant attempted to induce Tommy Conn, also known as Willis Gordon Conn, to become a party to capital murder.[1] Conn, a self-employed

---

1. Both solicitation indictments in the appellate record fail to name the person to be murdered, but the evidence discloses that Oleta Welch was the intended victim. Applicant's counsel advises that these indictments were quashed after the

roofer previously performing work for applicant, was another witness called by applicant to testify. Conn described the first solicitation offense by testifying that applicant had asked Conn to meet with him, presumably about a roofing job. Conn took his seven-year-old daughter to applicant's house, where applicant and a young boy were waiting outside. Applicant sent the boy away and paid Conn's daughter fifty cents to climb inside a truck while the two men talked. Applicant started the conversation by saying that he had already given one boat away, and another boat would be Conn's if Conn "did him a favor." Conn testified that applicant then offered $2,000 to kill Oleta.

Conn asked how applicant's marital problems could have become serious enough to warrant this action. Applicant responded that he did not know, but advised Conn never to let a woman "get the upper hand." Applicant then said that he was about to get two years in the penitentiary the next day, August 28, 1986, when applicant was scheduled to appear in court on the aggravated assault charge. Applicant said he "needed her gone, to disappear." He wanted Oleta's body "singed"—meaning burned—and said that without a body, the police would have no case. Applicant entered the house and obtained a gun which he said Conn could have to do the job.

Conn subsequently relayed applicant's offer to the authorities. Officers Steve Diffenbaugh and Mike Nelson[2] informed Conn that they needed applicant to speak to Nelson over the telephone. Conn arranged for Nelson to call the number of a pay-phone outside a local grocery store at an agreed time, and for applicant to be there to answer. Although an audio tape, possibly recording this telephone conversation, was offered to the trial court for *in camera* inspection, the judge declined to review it and the tape is not in the record. Conn, who overheard part of the discus-

sion, testified that Nelson identified himself as having come here "out of Florida." This corresponds with Conn's background, as he has a criminal history in that state. Applicant seemed reluctant to talk over the telephone, but did say that he needed "it" done by "the ninth." This referred to applicant's next court date set for September 9, 1986.

Nelson directed Conn to arrange a meeting with applicant in a hotel room selected by Nelson, but a mutually convenient time could not be arranged. However, an afternoon meeting in a ballpark was subsequently scheduled. This meeting is the basis of the second solicitation indictment, which alleges that applicant attempted to induce Nelson to become a party to capital murder on September 5, 1986. Again, the only evidence of this conversation presented at the bond-reduction hearing was Conn's testimony about the portion that he was present to hear. Applicant said that he would deal only with Conn, but Nelson told him, "No. From now on, you're dealing with me because I am here to do the job." Conn was then ordered back inside the car, and heard none of the remaining discussion except when Nelson called him out to ask whether applicant could pay the money to Conn, instead of paying Nelson directly. A few minutes later, Nelson arrested applicant.

Applicant is presently being held for trial on the two solicitation charges with bail set at $150,000 in each case. Counsel advises that applicant also has a pending indictment for attempted capital murder with bond set at $100,000.[3] Applicant has posted bond on one of the solicitation charges, and is incarcerated in lieu of bond on the other solicitation count and the attempted capital murder charge.

■ We will first address applicant's assertion, made in reliance on *Ex parte*

---

bond-reduction hearing, and that new solicitation indictments have been returned.

**2.** Although Diffenbaugh and Nelson are never identified as law enforcement officers, Conn refers to them as "the police" and applicant's attorney told the trial court that Nelson is em-

ployed with the Department of Public Safety in Garland.

**3.** It is unclear whether this attempted capital murder charge is merely a re-indictment of the same conduct previously giving rise to the aggravated assault indictment, or is unrelated.

*Slaughter*, 654 S.W.2d 17 (Tex.App.—Dallas 1983, pet. ref'd), that we should order him released from custody because the State failed to introduce evidence establishing probable cause for his continued detention. Unlike the situation in *Slaughter*, applicant has been indicted by a grand jury, which establishes probable cause as a matter of law and renders moot any further question on this issue. *Ex parte Plumb*, 595 S.W.2d 544, 545 (Tex.Crim.App.1980). Applicant's complaint that the State failed to prove probable cause is without merit.

■ Applicant claims in his brief that the trial court abused its discretion by denying the request to reduce bail. The setting of bail is a matter resting within the sound discretion of the trial court, and there is no precise standard for reviewing its determination. *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex.App.—Fort Worth 1982, pet. ref'd). Article 17.15 of the Texas Code of Criminal Procedure provides as follows:

The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense may be considered.

Tex.Crim.Proc.Code Ann. art. 17.15 (Vernon Supp.1986). Circumstances and factors to be considered in determining the amount of bond includes: family ties, residency, ability to make bond, aggravating factors involved in the offense, the defendant's work history, prior criminal record, and previous and outstanding bonds. *Ex parte Willman*, 695 S.W.2d 752, 754 (Tex. App.—Houston [1st Dist.] 1985, no pet.). The person seeking the reduction has the burden to show that the bail set is excessive. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex.Crim.App.1980).

The circumstances surrounding the charges pending against applicant are serious. The evidence shows that while already on bond awaiting trial for aggravated assault, a violent crime directed at his wife, applicant tried to hire Conn, and then Nelson, to murder his wife in order to prevent her from testifying. These repeated attempts against his wife's life, allegedly committed more than a week apart, must be viewed as an aggravating element in the bond-setting equation.

■ The nature of the offense also involves consideration of the punishment permitted for these offenses under the law. *Id.* Solicitation of capital murder and attempted capital murder are felonies of the first degree, punishable under section 12.-32(a) of the Texas Penal Code by confinement for as much as ninety-nine years, or life, and a fine not exceeding $10,000. Applicant thus faces the possibility of three life sentences.

Further, article 17.15(5) permits the trial court to consider the future safety of the victim of an alleged offense when setting the amount of bail. Aside from the evidence of applicant's continuing efforts to have Oleta killed, Conn's testimony that both he and Oleta fear for their lives touches on the issue of victim safety. They both left town with their respective families when applicant was previously out of jail on bond. When asked why he left, Conn replied, "Because I am telling you now, he is capable." Conn also testified that, after he arrived home from his first meeting with applicant, Conn was told by his seven-year-old daughter that applicant had threatened to "hurt" Conn if he did not do as applicant said.

■ Another factor in reviewing the trial court's order is applicant's ability to make bail; but ability alone, even indigency, does not control the amount of bail. *Ex*

*parte Charlesworth,* 600 S.W.2d 316, 317 (Tex.Crim.App.1980). If the ability to make a specified bond were determinative, then the trial court would be relegated to the position of setting bail as determined by the accused. *Ex parte Miller, supra.* Applicant must show that he has attempted and failed to make bail in the amount fixed. *Ex parte Sellers,* 516 S.W.2d 665, 666 (Tex. Crim.App.1974).

■ Applicant's employer testified that applicant makes $2,250 a month, and takes home approximately $1,700. He also may receive an annual bonus, but this would be less than $2,000. Applicant introduced evidence of a temporary order entered in his pending divorce case enjoining the parties from selling, mortgaging or encumbering any of their separate or community property "except as specifically authorized by order of this Court." Although applicant's sister testified that she has his car and his clothes at her house, she does not know whether applicant has any other assets or a bank account. She was asked whether applicant has any "separate property" through his family "other than what is tied up in the divorce" and replied that he did not. The only other testimony regarding applicant's financial situation came during a motion for rehearing, when applicant's girlfriend testified that she has control of applicant's property "not involved in the divorce"—consisting of a boat, a pick-up truck, insurance, and a small amount of cash. The bondsman told her that she needs to pay fifteen percent of the face amount of the bond and have collateral for the balance.

In *Ex parte Charlesworth, supra,* conflicting evidence regarding the applicants' financial condition was a factor in determining that they had failed to discharge their burden of establishing an abuse of discretion by the trial court in setting the amount of bail. The financial evidence presented in this case is, if not conflicting, at least incomplete because applicant has not attempted to utilize his resources "involved in the divorce" to furnish bail in the amount set. *See Ex parte Willman,* 695 S.W.2d at 753–54; *Ex parte Miller,* 631

S.W.2d at 826–27. Applicant has not shown the nature or the extent of the assets under control of the divorce court; nor has he made a showing of any effort to secure permission from the divorce court to apply any part of those assets to applicant's bonding needs.

■ The evidence presented to the trial court established the existence of a number of aggravating factors, *i.e.,* the nature of the offenses, the circumstances under which they were committed, outstanding bonds, and victim safety. Further, the evidence regarding applicant's financial situation is incomplete with respect to the extent of his efforts to post bond. Considering all of the evidence and factors relevant to determining the amount of bond, we hold that applicant has failed to satisfy his burden of showing that the trial court abused its discretion in refusing to lower applicant's bond.

The decision of the trial court is affirmed.