NUMBER 13-00-496-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

 
JORGE FERNANDO BRIONES, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
On appeal from the 107th District Court

of Cameron County, Texas.



O P I N I O N

Before Justices Yañez, Rodriguez, and Baird (1)

Opinion by Justice Baird



Appellant was charged in a three count indictment with the felony offenses of securing execution of a document by
deception, tampering with a governmental record, and hindering apprehension, respectively. Tex. Pen. Code Ann. §§
32.46, 37.10, 38.05 (Vernon Supp. 2002). The trial court granted appellant's motion for instructed verdict on the third
count. The jury convicted appellant of the offenses alleged in the first and second counts. The trial court assessed
punishment at five years confinement in the Texas Department of Criminal Justice--Institutional Division, probated. We
reverse and order an acquittal as to the first count, and affirm as to the second count.

I. Factual Summary.

These offenses arise out of a bail bond transaction. While the testimony at trial was both complicated and confusing, for
the purposes of this appeal the evidence may be summarized as follows. Appellant worked as a bondsman for Castaneda
Bail Bonds. He was asked to post a $75,000 surety bond for Maria Pulido, an alien, who was charged with the offense of
possession of 950 pounds of marihuana, a second degree felony, and confined in the Cameron County Jail. Appellant
agreed to post the bond, and was paid $7,500 to do so. The bond was presented to Sergeant Ricardo Bolivar, at the
Cameron County Jail. Bolivar signed the bond. However, as will be seen below, the bond was invalid. Nevertheless,
Pulido was released from custody, and presumably fled to Mexico, where she remains at large.

II. Count One. 

Securing execution of a document by deception is prescribed by section 32.46 of the Texas Penal Code, the relevant
portions of which provide: A person commits an offense if, with intent to defraud or harm any person, he, by deception
causes another to sign or execute any document affecting the pecuniary interest of any person. Tex. Pen. Code Ann. §
32.46(a)(1) (Vernon Supp. 2002). The application paragraph of the court's charge tracked the indictment, and permitted the
jury to convict if it found beyond a reasonable doubt that appellant, by deception "cause[d] Ricardo Bolivar to sign or
execute a document affecting the pecuniary interest of Omar Lucio, Cameron County Sheriff. . . ." Appellant contends the
evidence is insufficient to support the jury's verdict. Specifically, appellant argues the evidence is insufficient to prove
Bolivar signed or executed a document which affected Lucio's pecuniary interest. In resolving a sufficiency challenge, we
view the evidence in the light most favorable to the verdict, and ask whether any rational trier of fact could find the
essential elements of the crime as alleged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).
Critical to our resolution of this point of error is the testimony of Bolivar, Yvette Gutierrez, the bail bond administrator of
Cameron County, and the Honorable Omar Lucio, the Sheriff of Cameron County.

Bolivar testified he accepted the bond presented by appellant, signed it and placed it in a secured location, which was the
normal policy of the sheriff's office because bonds have value. The bond was subsequently sent to Yvette Gutierrez.
Bolivar stated the sheriff's department did not receive any of the money derived from bonds that were forfeited. 

Gutierrez testified there are three types of bail bonds: personal bonds, cash bonds and surety bonds. The latter is posted by
a licensed bondsman to secure the release of the principal. To be licensed, a bondsman must be approved by the bail bond
board. Some bond companies use the assets of insurance companies to secure their bonds. To utilize those assets,
bondsmen attach a power of attorney to the bond to ensure the company is liable for the amount of the bond, and will pay if
the principal fails to appear in court. If the amount of the power of attorney does not match or exceed the amount of the
bond, the bond is invalid. 

In the instant case, appellant attached a power of attorney in the amount of $5,000. This amount was insufficient to ensure
the principal's $75,000 bond. Nevertheless, the bond was signed by Bolivar, and Pulido was released from custody. When
Gutierrez noticed the bond was invalid, she contacted Octavio Castaneda, the owner of Castaneda Bail Bonds, and he
supplied a $100,000 power of attorney to secure the bond. 

Gutierrez explained that when a principal fails to appear, the bonding company is required to pay the amount of the bond.
Depending on whether the offense was a felony or misdemeanor, the payment is made to the district or county clerk. Those
funds are deposited into a specified road and bridge account for Cameron County. That account does not belong to the
sheriff's office. When asked specifically whether the sheriff's office received any monies, or held a pecuniary interest in the
bonds that were defaulted, Gutierrez answered, "No." 

Lucio testified on the subject of his pecuniary interest in this transaction. On direct examination, he testified as follows: 

Q. . . . What we want you to explain, sir, is how the bonds affect your office if your office were to receive a bad bond. Does
that in any way affect the pecuniary interest of the Sheriff's department, of your office?


A. Yes, sir. As a matter of fact, it not only affects my office, but it affects me personally. It affects all the people of
Cameron County.

My office, it affects it simply because I have a contract with the bonding company and when somebody gives me an invalid
bond that it makes it very difficult for us to collect that money. That money is supposed to go back into the road and bridge
[account] and that money is supposed to be used for the purpose of the benefit of the people of Cameron County, you, the
people of Cameron County.

So it affects us tremendously. When somebody like that gives an invalid bond and that person is released, it makes it very
difficult for us sometimes to apprehend that person.

And under my duties is also that when somebody who fails to go ahead and has an incomplete bond like that and then
there's a judgment so we can go ahead and try to collect that money one way or the other. So it makes it difficult for us to
do that if we don't have a valid bond.

Q. Okay. So if I understand your answer, it affects it in many ways. One way it would affect you is that you have the
individual contracts with those bondsmen as they're making it; and if they're giving you an invalid contract, then you don't
have the funds that you're required to collect as your position as sheriff. That's one way?

A. That's right.

Q. And then you also mentioned that once the paperwork is submitted and it goes all through the system and that person
doesn't show up and they do get a judgment on that bond, if it's an invalid bond, you as the sheriff cannot collect that for the
county; is that correct?

A. That's correct.

Q. Okay. So it affects the pecuniary interest in at least those two ways?

A. Yes, sir.

Q. Now, in this particular case it was a $75,000 bond that was invalid, sir. We already admitted that into evidence. So if it
were a $75,000 invalid bond, would it be safe to say that it affected your pecuniary interest in the amount of $75,000?

A. Yes, sir, it certainly would.

On cross examination, the following exchange occurred:

Q. What is your definition of pecuniary interest? What do you mean by pecuniary interest that affects you or your department?

A. Well, I'm a taxpayer. And when the county loses money, I lose money. Not only do I lose money, but any other citizen
here in the county that pays taxes loses money.



* * *



Q. It's not just the sheriff's department, right?

A. But definitely the sheriff's department because I am, I am in charge of the county jail. I am the one that's supposed to
have a contract with the bonding company. So it affects me and the sheriff's department.

Q. Out of every bond that is defaulted on and forfeited and the money is collected, how much of that money do you get or
does your department get?

A. I don't get a single penny; however, the money goes to the county and to be used for the benefit of the county.

A bail bond is a written undertaking entered into by the defendant and his sureties for the appearance of the principal before
some court or magistrate to answer a criminal accusation. Tex. Code Crim. Proc. Ann. art. 17.02 (Vernon 1977). As such,
a bail bond is a contract between the surety (the bonding company) and the State. Castaneda v. State, 55 S.W.3d 729, 731
(Tex. App.-Corpus Christi 2001, pet. granted). The contract consists of a promise by the surety that the principal will
appear before the court in exchange for a promise by the State that it will release the principal. Id. In the instant case,
appellant breached this contract by posting an invalid bond to secure the release of the principal, Pulido.

Because the term "pecuniary interest" is not defined under section 32.46, it is to be given its plain and ordinary meaning.
Goldstein v. State, 803 S.W.2d 777, 791 (Tex. App.-Dallas 1991, pet. ref'd). After turning to the dictionary and thesaurus
for assistance, the Goldstein Court determined the pecuniary interest requirement under section 32.46 was met if the
complainant had a "financial stake" in the matter. Id. This is consistent with the legal definition of pecuniary interest: "A
direct interest related to money in an action or case." Black's Law Dictionary 1131 (6th ed.1990). Therefore, the narrow
question before us is whether Lucio, in his official capacity as the Sheriff of Cameron County, had a direct financial stake
in the bail bond posted by appellant to secure Pulido's release. (2)

Although sparse in number, the published cases which have considered the issue of pecuniary interest under section 32.46
are important to our resolution of that question. We begin with Goldstein, where the defendant's home sustained water
damage. Goldstein, 803 S.W.2d at 783. The insurance company issued a draft payable to both the defendant and the
mortgagee to repair the damage. Id. at 786. The defendant told the mortgagee the repairs had been made. Id. Based upon
those representations the mortgagee endorsed the draft, and the defendant deposited the funds into his bank account. Id. at
787. However, the repairs had not been made at the time the defendant made those representations. Id. The Goldstein
Court held the evidence was sufficient to prove endorsing the draft affected the mortgagee's pecuniary interest in the home
because the draft was made payable to both the defendant and the mortgagee to "insure that repairs are completed when
mortgaged property suffers damage and that if repairs are not made, the value of the mortgaged property decreases." Id. at
792.

In Fisher v. State, 803 S.W.2d 828 (Tex. App.-Dallas 1991, pet. ref'd), the defendant was an out-of-state attorney, not
licensed to practice in Texas. Id. at 829. He filed a lawsuit by signing the name of a co-worker who was licensed to
practice in Texas, used her bar number, and requested the issuance of citation upon the complainant. Id. at 829-30. The
issue was whether the execution of the citation by the clerk which made the complainant, as the defendant in the lawsuit,
potentially liable for monetary damages affected the pecuniary interest of the complainant. The court held the evidence was
sufficient because but for the execution of the citation, the complainant's affirmative limitations defense would have acted
as a complete bar to liability. Id. at 830. Denying the complainant that defense would affect her pecuniary interest by
subjecting her to potential liability. Id.

Finally, in Tinsley v. State, 695 S.W.2d 93 (Tex. App.-Fort Worth 1985, pet. ref'd), the defendant misrepresented her
employment status when applying for AFDC benefits. Id. at 97. The court held the evidence was sufficient to prove the
defendant's deception affected the pecuniary interest of the Department of Human Resources (DHS) because that deception
caused the issuance of a check payable to and cashed by the defendant. Id.

Each of these three deceptive transactions directly affected the financial stake of the complainants: in Tinsley, the DHS
actually expended money; in Fisher, the complainant's legal defense which would have barred her paying monetary
damages was lost; and, in Goldstein, the mortgaged property decreased in value because the repair work was not done.
However, those cases stand in stark contrast to the instant case where the deceptive transaction led to Pulido's release from
custody. The mere release of Pulido did not directly impact Lucio's pecuniary interest. Indeed, this transaction would not
affect anyone's pecuniary interest unless Pulido failed to appear. And upon her failure to appear, the bond amount would be
paid by Castaneda Bail Bonds. Those funds would be earmarked to the Cameron County road and bridge account. There is
no evidence from any source that either Pulido's release or her subsequent failure to appear would have a direct financial
impact on Lucio in his official capacity as the Sheriff of Cameron County. In fact, the evidence is to the contrary. Gutierrez
specifically testified Lucio's office received no monies, and had no pecuniary interest in forfeited bonds. Similarly, Bolivar
testified the sheriff's department did not receive any of the money derived from bonds that were forfeited. And Lucio
testified that his office did not receive "a single penny" of forfeited bond funds. When this testimony is viewed in the light
most favorable to the prosecution, we find no rational trier of fact could find beyond a reasonable doubt that Bolivar's
signing the bond posted by appellant to secure Pulido's release affected the pecuniary interest of Lucio. Therefore, we hold
the evidence is legally insufficient to establish an offense under section 32.46(a)(1).


III. Count Two.

The second count of the indictment alleged the offense of tampering with a governmental record. Specifically, that count
alleged appellant made a false entry on the bond with the intent to defraud or harm Bolivar. An offense under section 37.10
of the Penal Code does not require the prescribed conduct affect the pecuniary interest of another. Tex. Pen. Code Ann.
§37.10 (Vernon Supp. 2002). We have carefully reviewed appellant's brief. His sole point of error is limited to the subject
of Lucio's pecuniary interest. Since Lucio is not the complainant in the second count, and since pecuniary interest is not an
element of the offense of tampering with a governmental record, appellant does not challenge the sufficiency of the
evidence to support the jury's verdict to count two.

The trial court's judgment as to count one of the indictment is reversed. The judgment of the trial court related to count two
is affirmed. The case is remanded to the trial court with instructions to enter a judgment of acquittal as to count one. Tex.
R. App. P. 43.2(c); Burks v. United States, 437 U.S. 1, 18 (1978); Greene v. Massey, 437 U.S. 19, 24 (1978).

 

Charles F. Baird

Justice



Publish.

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 21st day of March, 2002.

 

 

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. The fact that Lucio and the other residents of Cameron County had a nominal interest in the roads and bridges therein is
not controlling because the indictment named Lucio in his official capacity as sheriff. Therefore, only in that capacity did
Lucio have a justiciable interest in the subject matter of the prosecution. See generally Eddowes v. Curry, 599 S.W.2d 367,
370 (Tex. Civ. App.-Fort Worth 1980, writ ref'd n.r.e.) (county residents have only generalized interest in the enforcement
of criminal laws) (citing Yett v. Cook, 115 Tex. 205, 281 S.W. 837 (1926) (legal action related to matters of law
enforcement could not be maintained by one whose interest is only that of the public generally)).