Opinion issued July 7, 2005














In The
Court of Appeals
For The
First District of Texas
 

 
 
NOS. 01-04-01299-CR
          01-04-01300-CR
          01-04-01301-CR
          01-04-01302-CR
          01-04-01303-CR
  ___________
 
AMIT SURYAKANT MEHTA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 
 

 
 
On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause Nos. 40,721; 40,722; 40,723; 40,724; and 40,725
 

 
 
MEMORANDUM OPINIONAmit Suryakant Mehta, is charged with three counts of arson and two counts
of attempted arson. Bail was set at $200,000 for each arson charge and $20,000 for
each attempted arson charge, for a total of $640,000. After Mehta filed writs of
habeas corpus to reduce the bail, the trial court reduced bail to $100,000 for each
arson charge, but kept the attempted arson bail at $20,000 each, for a total of
$340,000. In addition, the trial court ordered that, in the event that he makes bond,
Mehta will be confined to his house and subject to electronic satellite monitoring. The
trial court denied his motion to reconsider,


 and Mehta now brings this appeal in
which we address whether bail in the aggregate amount of $340,000 in these cases
is excessive. We affirm.
Legal Authority
          The right to release before trial is conditioned upon the accused’s giving
adequate assurance that he will stand for trial and submit to sentence if convicted. 
Stack v. Boyle, 342 U.S. 1, 4, 72 S. Ct. 1, 3 (1951). Bail set at an amount higher than
reasonably calculated to fulfill this purpose is excessive under the Eighth
Amendment. Id.
          The burden is on the person seeking the reduction to demonstrate that bail is
excessive. See Ex parte Rubac, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981); Ex
parte Martinez-Velasco, 666 S.W.2d 613, 614 (Tex. App.—Houston [1st Dist.] 1984,
no pet.). The standard of review for reviewing bail settings is whether the trial court
abused its discretion. See Rubac, 611 S.W.2d at 849; Ex parte Ruiz, 129 S.W.3d 751,
753 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In the exercise of its discretion,
a trial court should consider the following factors in setting a defendant’s bail:
1. The bail shall be sufficiently high to give reasonable assurance
that the undertaking will be complied with.
 
2.The power to require bail is not to be used as an instrument of
oppression.
 
3.The nature of the offense and the circumstances of its commission
are to be considered.
 
4.The ability to make bail is to be regarded, and proof may be taken
on this point.
 
5.The future safety of a victim of the alleged offense and the
community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon Supp.2004); see Ludwig v. State,
812 S.W.2d 323, 324 (Tex. Crim. App. 1991) (noting that the court is “to be governed
in the exercise of [its] discretion by the Constitution and by the [article 17.15
factors]”). The primary purpose for setting bond is to secure the presence of the
defendant in court at his trial. Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex. Crim.
App. 1977); Ex parte Bonilla, 742 S.W.2d 743, 744 (Tex. App.—Houston [1st Dist.]
1987, no pet.). The strength of the evidence of the crime presented at the habeas
hearing has been considered in determining the propriety of bail. See Ex parte
Parish, 598 S.W.2d 872, 873 (Tex. Crim. App. 1980); Ex parte Sabur-Smith, 73
S.W.3d 436, 440 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The amount of bail
should be set sufficiently high to give reasonable assurance that the accused will
comply with the undertaking, but should not be set so high as to be an instrument of
oppression. Ex parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); Ex parte
Willman, 695 S.W.2d 752, 753 (Tex. App.—Houston [1st Dist.] 1985, no pet.). 
Courts should also consider the defendant’s work record, family and community ties,
length of residency, and past criminal record. See Rubac, 611 S.W.2d at 849; see also
Martinez-Velasco, 666 S.W.2d at 614-15.
Discussion
A. Nature of the Offense
          David Bock, special agent with the Bureau of Alcohol, Tobacco, Firearms, and
Explosives, testified at the habeas hearing that, after a one-year investigation, he
interviewed Mehta, and Mehta “gave admission” to 17 arsons. Bock explained that
these were residential fires set in the daytime, and “all of the victims were associated
with each other and most were associated with the VPSS [Hindu] temple.” Bock
testified that the Indian community in Southwest Houston, which numbers in the
thousands, was concerned for their health and safety. This concern has “subsided”
since Mehta was placed in custody. It was Bock’s opinion that Mehta is a danger to
society if released again.
          Arson - Second Degree Felony 
          The State has charged Mehta with three counts of arson, all second degree
felonies. See Tex. Pen. Code Ann. § 28.02 (Vernon 2003). The arson offenses each
carry a sentence of 2 to 20 years and a fine not to exceed $10,000. Tex. Pen. Code
Ann. § 12.33 (Vernon 2003). 
          The bail amounts for second degree felony offenses range from $30,000 to
$75,000. See, e.g., Ex parte Garcia, 100 S.W.3d 243, 246 (Tex. App.—San Antonio
2001, no pet.) ($50,000 for indecency with a child); Briones v. State, 76 S.W.3d 591,
592 (Tex. App.—Corpus Christi 2002, no pet.) ($75,000 for possession of 750 lbs of
marihuana); Ex parte Sabur-Smith, 73 S.W.2d 436, 437 (Tex. App.—Houston [1st
Dist.] 2002, no pet.) (this Court reversed and reduced bail from $150,000 down to
$30,000 for sexual assault); Ex parte Bogia, 56 S.W.3d 835, 836 (Tex.
App.—Houston [1st Dist.] 2001, no pet.) (this Court reversed and reduced bail from
$360,000 down to $10,000 for theft of more than $100,000 and less than $200,000); 
Esquivel v. State, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.)
(affirmed $150,000.00 bond on 15 counts of sexual assault, indecency with a child,
and prohibited sexual assault); Ex parte Bell, 784 S.W.2d 577, 579 (Tex.
App.—Houston [1st Dist.] 1990, pet. ref’d, untimely filed) ( reduced $150,000 bond
to $10,000 for burglary of a habitation with intent to commit sexual assault). 
          In fact, the bail assessed in this case was well above that set in numerous
violent first degree felony cases. See, e.g., Ludwig v. State, 812 S.W.2d 323, 325
(Tex. Crim. App. 1991) (reduced bail from $1,000,000 to $50,000 where appellant
charged with capital murder of two individuals); Montalvo v. State, 786 S.W.2d 710,
711 (Tex. Crim. App. 1989) (setting bail on murder conviction pending appeal at
$25,000); Ex parte Ivey, 594 S.W.2d 98, 100 (Tex. Crim. App. 1980) (reduced an
appeal bond in an armed robbery case from $250,000 to $50,000); Ex parte Vasquez,
558 S.W.2d 477, 480 (Tex. Crim. App. 1977) (reduced a $100,000 bond for capital
murder to $20,000).
          Attempted Arson - Third Degree Felony
          Mehta has also been charged with two counts of attempted arson, both of which
are third degree felonies. See Tex. Pen. Code Ann. §15.01 (Vernon 2003). The
attempted arson offenses each carry a sentence of 2 to 10 years in prison and a fine
not to exceed $10,000. Tex. Pen. Code Ann. §12.34 (Vernon 2003). 
          The bail amounts set for third-degree felonies range from $25,000 to $150,000. 
See, e.g., Ex parte Durst, 148 S.W.3d 496, 501 (Tex. App.—Houston [14th Dist.]
2004, no pet.); In re Hulin, 31 S.W.3d 754, 755 (Tex. App.—Houston [1st Dist.]
2000, no pet.) (bail of $50,000 for criminal solicitation of a minor); Ex parte
McCullough, 993 S.W.2d 836, 836-37 (Tex. App.—Waco 1999, no pet.) (bail of
$25,000 for three counts of injury to an elderly person); Applewhite v. State, 872
S.W.2d 32, 33 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (bail of $80,000 for
theft). 
          Considering this factor alone, a bail for the attempted arson charges within this
range would not be unreasonable. However, in relation to bonds set in other second
degree felony cases, we find the $100,000 bond in this case excessive.
B. Sufficient Bail to Assure Appearance But Not Oppress
          Mehta’s wife, Daxa Mehta, was asked if she thought her husband would come
to court if released on bond. At first, she said that he would appear. Then, she was
asked, “You don’t expect him to run away, do you?” to which she responded, “Well,
he’s mentally still not stable, so I think if I started work, I don’t know.” When asked
to clarify, she responded, “I said mentally he’s not stable, so sometimes if I work and
nobody is at the home, so who’s going to take care of him?” 
          In Mehta’s favor, he turned himself in. Voluntary surrender is a factor that
courts have used to lower a bond. See, e.g., Ex parte Hellenguard, 622 S.W.2d 875,
875-76 (Tex. Crim. App. 1981) (bail reduced in murder case from $100,000 to
$25,000 where defendant voluntarily surrendered to sheriff); Ex parte Walton, 583
S.W.2d 786, 786-87 (Tex. Crim. App. 1979) (bail reduced in murder case from
$25,000 to $15,000 where defendant voluntarily surrendered to police); Ex parte
McDonald, 852 S.W.2d 730, 736 (Tex. App.—San Antonio 1993, no pet.) (bail
reduced in murder case from $1,000,000 to $75,000 where defendant turned himself
into police before they knew offense had been committed).
C. Ability to Make Bail
          The ability of appellant to make bail and proof thereof is another factor to be
considered by the court. Daxa Mehta, Mehta’s wife, testified that, despite his
previously having worked for Shell Oil for 12 years, Mehta is unemployable because
he is “mentally unstable.” Daxa makes $800 a month working part-time for Dillard’s
department stores.


 She introduced exhibits showing that several of her credit card
bills are delinquent—one with a $750 balance and one with a $6,876 balance. She
submitted evidence that Shell loaned her $11,423, for which she was required to pay
$104.71 a month. There was evidence that Mehta had recently received a
delinquency notice from the Shell Employees Federal Credit Union indicating that he
had neglected to pay $271.90 on his $5,754 balance. Daxa’s monthly statement from
Honda Financial Services reflected that she owed a monthly payment of $371.42 on
a 2003 Honda Accord with an estimated payoff of $16,829.54. 
          Daxa testified that she has $69,000 in equity in her home, and she has family
members who supplement her income. She acknowledged that her home was
probably worth $80,000, but she did not want to sell it because she and her two
children would have no place to live.
          Ability to make bail is only a factor that needs to be considered. It is not
dispositive. Ex parte Jones, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991). This is
true even if the appellant is indigent. Ex parte Charlesworth, 600 S.W.2d 316, 317
(Tex. Crim. App. 1980) (“Although the ability to make bail is a factor to be
considered, ability alone, even indigency, does not control the amount of bail.”). 
Indeed, “[i]f the ability to make a specified bond were determinative, then the trial
court would be relegated to the position of setting bail as determined by the accused.” 
Ex parte Welch, 729 S.W.2d 306, 310 (Tex. App.—Dallas 1987, no pet.); see also Ex
parte Miller, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet ref’d). The
burden is on the party seeking a reduction to show that the bail set is excessive. 
Rubac, 611 S.W.2d at 849. This requires the appellant to show he is unable to furnish
bail in the amount set. Ex parte Stembridge, 472 S.W.2d 155, 155 (Tex. Crim. App.
1971); Ex parte Williams, 467 S.W.2d 433, 434 (Tex. Crim. App. 1971) (explaining
that complaint of excessive bail will not stand in the absence of evidence that
appellant tried to furnish bail).


 
D. Future Safety of the Victims and the Community
          Mehta has no criminal history. Bock testified that Mehta targeted a specific
community, and the community of “thousands” were “concerned” for their health and
safety. Bock further testified that these were residential fires. Fortunately, no one
was injured when these 17 fires were set, but they were, nonetheless, set at homes. 
Furthermore, we cannot overlook the number of offenses for which Mehta is charged. 
         Daxa testified that Mehta is mentally unstable and refuses to take medication
to treat this instability. She testified that, if she is not at home, she is uncertain who
would care for Mehta. The obvious implication being that he could not be trusted to
care for himself.
E. The Remaining Factors  
          We next consider the remaining factors—an established work record, family
ties to Fort Bend County, length of residence, and past record of appearing for trial. 
While, at one time, Mehta had an established work record, now, he is unemployed,
and his wife claims that he is unemployable because he is “mentally unstable.” His
wife and two children live in Fort Bend County, and one child attends Houston
Baptist University, while his younger child attends high school in Fort Bend County. 
Mehta has no criminal record,


 and he voluntarily surrendered to the police. 
          In sum, Mehta confessed to 17 arsons; there are three arson charges pending
against him in Harris County; he is not working; there is arguably enough equity in
his home to make bail; his wife testified that she was uncertain if he would run away
if no one was taking care of him; and, if convicted, his sentence could be up to 80
years in prison with a $50,000 fine. Accordingly, we hold that Mehta did not meet
his burden of showing that the trial court abused its discretion in denying his motion
to reconsider his bail. See Rubac, 611 S.W.2d at 849.
Conclusion
          We affirm the trial court’s order denying Mehta’s motion to reconsider.

                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).