# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00032-CR

**Ex parte Joey Rean**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT NO. D-1-DC-08-302820, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## MEMORANDUM OPINION

Joey Rean is confined while awaiting trial on charges that he sexually assaulted his teenage daughter, T.R. Bail was set at $250,000. Rean filed an application for writ of habeas corpus seeking a reduction in the bail amount. Following an evidentiary hearing in which Rean's counsel requested that bail be reduced to $50,000, the district court denied Rean's request. In a single issue on appeal, Rean asserts that the district court abused its discretion by failing to reduce the bail amount. We will affirm the district court's order.

## STANDARD AND SCOPE OF REVIEW

The setting of bail is committed to the sound discretion of the trial court, but the exercise of that discretion is governed by the constitution and by statute. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005). In setting bail, a balance must be struck between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial. *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd). Both the federal and state constitutions prohibit excessive bail. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. Bail

is excessive if it is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Beard*, 92 S.W.3d at 573. In addition to the constitutional prohibition against excessive bail, the Texas Legislature has imposed the following statutory requirements:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15.

In setting the amount of bail, the trial court may also give consideration to such factors as: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981)).

We review the trial court's ruling on a request to reduce bail under an abuse-of-discretion standard. *See Rubac*, 611 S.W.2d at 850; *Clemons v. State*, 220 S.W.3d 176, 178

2

(Tex. App.—Eastland 2007, no pet.) (per curiam). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Clemons*, 220 S.W.3d at 178.

In a habeas case, the writ applicant bears the burden of proving facts that would entitle him to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993). The burden of proof is upon an applicant who claims bail is excessive, *see Rubac*, 611 S.W.2d at 849; *Milner v. State*, 263 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2006, no pet.), and we will not reduce the trial court's bail amount unless the applicant has satisfied this burden. *See Gentry*, 615 S.W.2d at 231 (reducing bail amount after reviewing court was "completely satisfied that petitioner discharged her burden of showing her entitlement" to bail reduction); *Ex parte Welch*, 729 S.W.2d 306, 310 (Tex. App.—Dallas 1987, no pet.) (refusing to reduce bail amount when reviewing court found, after considering "all of the evidence and factors relevant to determining the amount of bond," that "applicant has failed to satisfy his burden of showing that the trial court abused its discretion in refusing to lower applicant's bond"). We proceed to review the evidence in this case in light of the above considerations.

## ANALYSIS

### Statutory factors

#### *Sufficient bail to assure appearance but not oppress*

The first two statutory factors are interrelated. The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). Thus, the amount of bail must be high enough to give reasonable assurance that the accused will appear as required. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). However, while bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument of oppression. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). This occurs when the trial court sets bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial or appeal. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (per curiam).

In claiming that the amount of bail in this case was oppressively high, Rean cites to several older cases involving different offenses in which the reviewing court reduced the bail amount after finding that the trial court's bail amount was excessive. *See Ludwig v. State*, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991) (in murder case, reducing bail amount from $1,000,000 to $50,000); *Ex parte Ivey*, 594 S.W.2d 98, 100 (Tex. Crim. App. 1980) (in aggravated robbery case, reducing bail amount from $250,000 to $50,000); *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977) (in capital murder case, reducing bail amount from $100,000 to $20,000); *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977) (in case involving conspiracy to commit capital

4

murder, reducing bail amount from $150,000 to $15,000); *Smithwick v. State*, 880 S.W.2d 510, 511 (Tex. App.—San Antonio 1994, no pet.) (in case involving murder and injury to child, reducing bail amount from $500,000 to $100,000); *Ex parte McDonald*, 852 S.W.2d 730, 735-36 (Tex. App.—San Antonio 1993, no pet.) (in capital murder case, reducing bail amount from $1,000,000 to $75,000). However, as this Court has observed, "'Case law is of relatively little value in addressing the ultimate question of the appropriate amount of bail in a particular case' because appellate decisions on bail matters are often brief and avoid extended discussions, and because the 'cases are so individualized that generalization from results reached in others is difficult.'" *Beard*, 92 S.W.3d at 571 (citing 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 16.51 (2d ed. 2001)). Finding significant factual differences between the above cases and the case before us, we do not find the cited cases to be persuasive here.[1]

Rean also points to the district court's oral pronouncement denying habeas relief as evidence that the district court refused to reduce the bail amount in order to ensure that he would remain incarcerated. At the conclusion of the evidentiary hearing, the district court stated the following:

---

[1] For example, in *Ludwig*, the defendant had a child-custody proceeding pending which would require his presence in the jurisdiction, and he had several close relatives who were long-time Texas citizens and were willing to sign a bond ensuring his appearance at trial. *See Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991). In *Ivey*, the defendant was a lifetime resident of the city in which he was being tried, had a family and owned a house in that city, and both his parents and his wife's parents were from that city. *Ex parte Ivey*, 594 S.W.2d 98, 100 (Tex. Crim. App. 1980). In *Vasquez*, it was undisputed that the defendant was indigent, and, although there was little evidence presented concerning the circumstances surrounding the offense, it appeared that the defendant was, at most, responsible as a party to the offense. *Ex parte Vasquez*, 558 S.W.2d 477, 479-80 (Tex. Crim. App. 1977). The other cases cited by Rean are similarly distinguishable from the facts of this case.

> Based upon the allegations that [the magistrate who set the bail amount] reviewed and what I have, in addition to what I have heard today, court finds that there's not any reason, compelling reason for me to lower the bond. I think the safety of the victim is paramount in this case, based upon the probable cause affidavit, and that's why [the magistrate] set it at $250,000, so I'm not going to second guess his bond.

We disagree with Rean's characterization of the district court's pronouncement. While it does suggest that the district court was primarily concerned with the safety of the victim, that is one of the statutory factors the district court is required to consider in its decision. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). And, as we discuss below, the district court's concern was supported by the evidence in the record. However, nothing in the district court's oral pronouncement or anything else in the record suggests that the district court refused to consider the other statutory factors in her decision, or that she refused to reduce bail for the "express purpose" of forcing Rean to remain incarcerated. *See Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Ex parte Davis*, 147 S.W.3d 546, 549 (Tex. App.—Waco 2004, no pet.); *Ex parte Milburn*, 8 S.W.3d 422, 426 (Tex. App.—Amarillo 1999, no pet.). To the contrary, as we discuss below, the record reflects that the district court considered evidence concerning the other statutory factors, including whether Rean would appear at trial, the nature and circumstances of the charged offense, and Rean's ability to make bail.

### Nature of offense

The third factor under article 17.15 is the nature of the offense for which the defendant is charged and the circumstances under which it was committed. Rean is accused of sexually assaulting his teenage daughter beginning when she was fourteen years old and continuing

6

until she was nineteen years old. Included in the record is the probable-cause affidavit supporting the arrest warrant. The affidavit describes in detail the allegations against Rean, including that Rean "use[d] sex as a form of punishment," forced his daughter to have oral, vaginal, and anal intercourse with him on multiple occasions, and "threatened to kill [T.R.] if she told anyone." The affidavit goes on to describe the following:

> [T.R.] then told Affiant that Joey had been abusing her since she was fourteen years old. . . .
>
> [T.R.] said that when she was sixteen and seventeen she attempted to keep track of how many times Joey forced her to have sex. [T.R.] said that she lost track when the number rose above one-hundred. [T.R.] said that she was very afraid of Joey because he threatened to kill her and bury her if she told anyone.
>
> [T.R.] also told Affiant that she has never had sex with any male except for Joey. In September of [2008], [T.R.] had a miscarriage. [T.R.] did not know that she was pregnant. . . . [T.R.] also showed Affiant a prescription bottle that belonged to her. . . . [T.R.] said that the medication was prescribed because Joey had given her herpes.

Rean was arrested and indicted based on the above allegations. The indictment contains eight counts—three counts alleging sexual assault of a child, a first-degree felony; four counts alleging indecency with a child by contact, a second-degree felony; and one count alleging indecency with a child by exposure, a third-degree felony. *See* Tex. Penal Code Ann. § 21.11(a)(1), (2), (d) (West 2003); § 22.011(a)(2), (f) (West Supp. 2008). Thus, the record reflects that the nature of these offenses and the alleged circumstances surrounding their commission are very serious.

When reviewing the appropriate bail for a particular offense, appellate courts often compare bail amounts in other cases involving offenses of the same degree. This is because such

offenses carry the same punishment range, which is a proper consideration in determining the nature of the offense charged. *See Charlesworth*, 600 S.W.2d at 317; *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977); *Maldonado*, 999 S.W.2d at 95.

The most serious offense of which Rean stands charged is sexual assault of a child. As alleged, the offense is a first-degree felony. *See* Tex. Penal Code Ann. § 22.011(a)(2), (f). The punishment for a first-degree felony is imprisonment for five to 99 years or life, plus a fine not to exceed $10,000. *Id*. § 12.32 (West 2003). Perhaps reflecting the wide range of punishment, Texas courts have approved bail amounts as low as $1,000 and as high as $1,000,000 for first-degree felony offenses. *See, e.g.*, *Ex parte Carson*, 215 S.W.3d 921, 924 (Tex. App.—Texarkana 2007, no pet.) (in case involving first-degree felony offense of possession of controlled substance, setting bail at $1,000); *Gonzalez v. State*, 996 S.W.2d 350, 353 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (in case involving aggravated robbery, approving bail set at $90,000); *see also Tran v. State*, No. 01-06-00035-CR, 2006 Tex. App. LEXIS 5658, at *1, 12 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.) (not designated for publication) (in case involving drug possession, approving bail set at $800,000 for cocaine possession and $500,000 for marihuana possession); *Pharris v. State*, No. 14-06-00788-CR, 2006 Tex. App. LEXIS 9899, at *1, 6 (Tex. App.—Houston [14th Dist.] Nov. 16, 2006, pet. ref'd) (per curiam) (not designated for publication) (in case involving offense of first-degree felony theft, approving bail set at $500,000); *Ex parte Cuevas*, No. 11-03-00402-CR, 2004 Tex. App. LEXIS 2457, at *1, 15 (Tex. App.—Eastland Mar. 18, 2004, no pet.) (not designated for publication) (in case involving offense of engaging in organized criminal

activity to commit theft, approving bail set at $1,000,000).  The bail amount set in this case, $250,000, is within the range of bail amounts approved for other first-degree felonies.

$250,000 is also comparable to the bail amounts approved in similar cases involving sex offenses.  *See, e.g.*, *Clemons*, 220 S.W.3d at 179 (Tex. App.—Eastland 2007, no pet.) (in case involving two indictments for aggravated sexual assault of child and two indictments for indecency with child, approving total bail set at $600,000); *Ex parte Hulin*, 31 S.W.3d 754, 762 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (in case involving offenses of sexual assault and criminal solicitation of 15-year-old minor, approving total bail set at $150,000); *Esquivel v. State*, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.) (in case involving fifteen counts of sexual offenses involving defendant's sixteen-year-old daughter, approving total bail set at $150,000); *see also Ex parte Bennett*, No. 02-07-00175-CR, 2007 Tex. App. LEXIS 8292, at *1, 12 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (not designated for publication) (in case involving three counts of aggravated sexual assault of child, approving bail set at $200,000 for each count); *Billings v. State*, No. 11-07-00057-CR, 2007 Tex. App. LEXIS 6340, at *1, 8 (Tex. App.—Eastland Aug. 9, 2007, no pet.) (not designated for publication) (in case involving aggravated sexual assault of child, approving bail set at $500,000); *Ex parte Bratcher*, Nos. 05-05-00634-CR & 05-05-00635-CR, 2005 Tex. App. LEXIS 5418, at *1, 14 (Tex. App.—Dallas July 13, 2005, no pet.) (not designated for publication) (in two cases involving offense of aggravated sexual assault of child, approving bail set at $500,000 for each case); *Ex parte Ochoa*, Nos. 01-04-00238-CR, 01-04-00239-CR & 01-04-00240-CR, 2004 Tex. App. LEXIS 5817, at *1, 9-10

(Tex. App.—Houston [1st Dist.] July 1, 2004, pet. ref'd) (not designated for publication) (in three cases involving offense of indecency with child, approving bail set at $100,000 for each case).

We also observe that the eight counts in the indictment alleged the repeated commission of the same or similar offenses. Thus, the State could argue during punishment that each offense arose out of the same criminal episode, and any sentences Rean might receive could be ordered to run consecutively. *See* Tex. Penal Code Ann. § 3.03(b)(2) (West Supp. 2008). Accordingly, if convicted, Rean could receive a very lengthy sentence. *See Clemons*, 220 S.W.3d at 179. The State also introduced testimony from a police officer that "it's common knowledge within the law enforcement community" that inmates in Texas prisons tend to target other inmates who have been convicted of child sex offenses or who are former law enforcement officers. The State argued that Rean, as a DPS Trooper, was likely aware of this fact, making him more of a flight risk.

Finally, in determining the nature of the offense, the familial relationship between the defendant and the victim is also relevant. As the San Antonio Court of Appeals has previously explained when approving a comparable bail amount in a similar case,

> The offenses charged in this case—incest, sexual assault of a child, and indecency with a child by exposure and contact—are extremely repugnant. Considering that the accused is the natural father of the victim, a greater sense of helplessness and overreaching by a person in authority cannot be imagined. A child has a right to look to her parents for support and guidance when there are no others. Such behavior, if true, not only is an affront to a civilized society, but to any primitive tribe of people as well.

*Esquivel*, 922 S.W.2d at 603.

10

*Ability to make bail*

The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive. *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980); *Maldonado*, 999 S.W.2d at 96. This is true even if the accused is determined to be indigent. *Charlesworth*, 600 S.W.2d at 317. If the ability to make bail in a specified amount controlled, the role of the trial court in setting bail would be unnecessary and the accused would be able to set his own bail. *Ex parte Hunt*, 138 S.W.3d at 506.

Rean presented some evidence that he could not afford to post bail. Although Rean did not testify at the hearing, his ex-wife, Gloria Rean, did. Gloria testified that Rean, a DPS Trooper, had been "suspended with pay" pending the outcome of the case. According to Gloria, Rean is paid approximately $2,400 per month. When asked if Rean was financially able to post bail in the amount of $250,000, Gloria testified, "No, he's not." However, Rean provided no evidence about his monthly expenses, any money he currently has in his checking account, or any savings accounts he might be able to access. Furthermore, there was evidence presented that Rean had part-time jobs in addition to his employment as a DPS Trooper, including, according to Gloria, "his own business" selling "security items." However, no testimony was elicited about how much income Rean received from these other jobs.

Gloria also testified that she was trying to post bail on Rean's behalf. She had contacted a bail bondsman but was not successful in negotiating an agreement for the bondsman to post bail at the current amount. Furthermore, Gloria had just been "laid off" by her employer, and

11

she had only $9,000 in cash available, $7,000 of which was a loan from a friend. However, Gloria testified that if bail was lowered to $50,000, she would be able to afford the $5,000 required to obtain Rean's release.[2] When asked if paying $9,000 in cash would be a burden on her and her family, Gloria testified, "Yes." Gloria added, "Because it's all the money we have, and I didn't get paid for December, or may not get paid for January 15th, and I'm using part of the money that [Rean] just got paid to help bail him out."

### *Future safety of the victim and the community*

The final statutory factor examines the safety of the victim and the community if the defendant were to be released on bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). The victim in this case is T.R., Rean's daughter who was nineteen years old at the time of the hearing. According to the probable-cause affidavit, Rean threatened "to kill her and bury her if she told anyone" about what he did.

There is also other evidence in the record about Rean's alleged propensity for threats, violence, and abuse. The lead officer in the criminal investigation, Detective Craig Smith of the Travis County Sheriff's Office, was asked about whether Rean's current wife, Sonia Rean, told him about a threat that Rean had made to her. Smith testified, "She told me that just after they were married, that Joey told her that now that they were married, the only way she could get out of the relationship was if he was burying her six feet under in the backyard." Smith was also asked about

---

[2] A bail bondsman typically charges 10% of the total bail amount and requires "substantial collateral" before agreeing to post the bail. *See Ex parte Sabur-Smith*, 73 S.W.3d 436, 440 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

statements Gloria had made to him concerning Rean's behavior toward her older daughter from her first marriage. Smith testified that Gloria told him that, when her daughter was fourteen years old, "she was getting a massage from Joey, that he was rubbing her legs, she fell asleep and when she woke up she was nude and didn't know what had happened." Smith also testified that Gloria had told him that sleeping pills may have been involved in the incident.

Gloria also has a younger daughter who was thirteen years old at the time of the hearing. Smith testified that Gloria had told him that she did not believe that Rean had done anything to this child, "but she told me she was going to take her to the doctor to be checked, just to be sure." Smith also testified that Gloria had told him that she was afraid of Rean:

> She told me that she had spoken with Joey and that he had told her that he was looking for a gun and she said that he sounded that he was suicidal and she was afraid of him and so she was staying at her boss's house where it was safe.

The State also presented evidence that Rean owned at least three or four firearms that Gloria had taken from either Rean's apartment or his truck after he was arrested. Gloria explained that she was trying to sell these firearms in order to raise money to post bail. Gloria testified that these weapons included a revolver and two rifles. According to Gloria, she had sold the revolver, but the rifles remained in her possession. Gloria also testified that she owned a 12-gauge shotgun. The State argued that, if Rean was released, he might be able to gain access to these or other firearms through Gloria or Homer Palomino, Rean's friend who had loaned Gloria $7,000 to post bail.

Based on the above evidence, the district court could have found that Rean was a danger to both the victim and the community, and the $250,000 bail was necessary to ensure

13

their safety. Rean argues, however, that the safety of the victim and the community was already ensured by bond conditions that the magistrate had imposed, including requirements that Rean have no communication with the complaining witness, no possession of firearms, and that he have a curfew and be monitored via GPS. Rean further argues that, by failing to reduce the bail amount, the district court violated the statute that authorizes a magistrate to "impose any reasonable condition of bond related to the safety of a victim of the alleged offense or to the safety of the community." *See* Tex. Code Crim. Proc. Ann. art. 17.40(a) (West Supp. 2008). However, Rean overlooks the fact that it was the magistrate, not the district court, that set bail at $250,000. It was the magistrate that apparently believed *both* the $250,000 bail and the bond conditions were necessary to ensure the safety of the victim and the community. The district court, after considering all of the evidence presented at the hearing, simply agreed with the magistrate's decision, and, on this record, we cannot conclude that the district court abused its discretion by doing so.

**Other factors**

There is some evidence in the record about Rean's work history. Gloria testified that, when she met Rean in 1994, he was serving in the military. When Rean and Gloria were married in 1998, Rean was still in the military. Later, Gloria testified, Rean "went [on] to be a state trooper and National Guard." He is currently a DPS Trooper.

As for family, community, and other ties to the area, Rean currently resides in Pflugerville, although the record does not indicate how long he has lived there. Gloria testified that, prior to moving to Pflugerville, Rean resided in Garland, a suburb of Dallas. Gloria was born and raised in El Paso and has also lived in Rockwell and Terrell, Texas. She has lived in the north Texas

14

area since 1997 and currently resides in Dallas. In addition to his connection to the Dallas area, Rean also has a tie to California. Homer Palomino, Rean's friend who loaned Gloria $7,000 to post bail for Rean, resides in San Diego.

The remaining factors are not implicated in this case. Rean has no prior criminal history, and there is nothing in the record concerning Rean's conformity with previous bond conditions or the existence of other outstanding bonds.

**CONCLUSION**

On the above record, we cannot conclude that the district court abused its discretion in denying Rean's request to reduce bail. Although there is some evidence in the record that Rean cannot afford the current bail amount, this evidence does not establish, in Rean's words, his "obvious indigency." According to his ex-wife, at the time of the hearing, Rean was "suspended with pay," still employed as a DPS Trooper and receiving approximately $2,400 per month. And, there was no testimony about how much money Rean may have had in checking or savings accounts. However, even assuming that Rean could not afford bail, this factor is not controlling. *See Hunt*, 138 S.W.3d at 506.

The other factors weigh in favor of the district court's decision. The record does not reflect that the district court refused to reduce bail for the "express purpose" of forcing Rean to remain incarcerated. Although Rean has a fairly stable work record and no prior criminal history, the offenses of which he stands charged and the alleged circumstances surrounding their commission are very serious. The bail amount is within the range Texas courts have approved for first-degree felonies and is comparable to the bail amounts approved in similar cases involving sex offenses.

15

There was evidence presented that Rean was a continuing danger to both the victim and the community. Finally, the State presented evidence from which the district court could have reasonably inferred that Rean was a flight risk. If convicted, Rean could face a very lengthy sentence and be "targeted" by other inmates. Plus, Rean had connections to both the Dallas area and California but few ties to the Austin area.

On this record, we conclude that Rean has failed to satisfy his burden to prove that bail in this case was excessive, i.e., that it was "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Beard*, 92 S.W.3d at 573. We overrule Rean's sole issue on appeal.

We affirm the order of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: August 26, 2009

Do Not Publish

16