**AFFIRMED; Opinion Filed September 24, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00820-CR

## EX PARTE ROBERT ALLAN MILLER

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 88341-422**

## OPINION

Before Justices Moseley, Myers, and Evans
Opinion by Justice Moseley

Robert Allan Miller appeals the trial court's order denying him the relief sought by his pretrial application for writ of habeas corpus seeking a reduction of his bonds. In a single issue, appellant complains the trial court abused its discretion by refusing to reduce the bail on his two charges to $10,000 each because the amounts set are excessive and in violation of the United States and Texas Constitutions.

BACKGROUND

On April 4, 2013, appellant was arrested for the offense of terroristic threat. The trial court set appellant's bail at $1,000,000. On May 15, 2013, appellant filed an application for writ of habeas corpus seeking reasonable bail. On May 16, 2013, appellant was charged in a two-count indictment with terroristic threat and obstruction or retaliation. The indictment also

included one enhancement paragraph alleging a prior final felony conviction. On May 29, 2013, appellant filed a second amended petition for writ of habeas corpus seeking a reduction in bail on the terroristic threat charge to $10,000 and seeking to have bail set at $10,000 on the obstruction or retaliation charge.

Both alleged offenses arise from a posting on the internet site Facebook; the post is as follows (spelling, punctuation, and grammatical constructs are original):

> There has been no mistake or coincidence concerning the murders of the two Kaufman County District Attorney's Office officials. I expect that Assistant District Attorney Daniel Floyd will soon perish, bringing closure to an era of unacceptable practices and allowing Kaufman County residents to move forward with liberty and justice. What's happening is not an attack on the Criminal Justice System as a whole. It's a person or group who have unjustly had their lives destroyed by that office. What we are seeing unfold are acts of revenge against the tyrannical, unjust, Pit Bull style treatment of every poor soul damned to do business in the Kaufman County Courthouse. What District Attorney Mike McLelland boasted of as "In your face prosecuting". They make it personal, very personal. They quickly railroad a Defense Attorney and Defendant into complete despair without regard for ones innocence or guilt.
>
> Visitors to the Courthouse are quickly slapped with the air of 1950's deep south backwoods rule. Upon entering, citizens are immediately chastised for common manners of dress and hairstyle. They're forced to remove any piercings, other than women's ears. They're made to tuck in all shirts without regard to the type or style. They must leave the premises and return changed if a tee shirt has anything printed on it or if a woman is wearing anything considered by a Sheriffs Deputy to be even slightly provocative. Proceedings in Dallas, Tarrant, Denton, Collin, and Hunt County Courts all seem to function in a professional, polite, business like fashion. Kaufman County's Courthouse is a step back in time. An oppressive, completely offensive affront to the citizens of its beautiful county.

Kaufman County's Defense Attorney's are quick to admit doubt of the prospect of a fair trial. A defendant is not given their "day in court" in Kaufman. Defendants and Defense Attorneys alike are belittled, berated, and, treated with disrespect from initial contact to fruition. The defendant is guilty simply by the fact that they were arrested. According to McCellan's own unofficial office policy, no mitigating circumstances or reason will be heard or taken into consideration in any case. The District Attorney's Office shall do anything and everything necessary, by any means, to find the accused guilty and levy the maximum punishment allowable, in every case, without exception, no matter what.

Kaufman County prosecutors violently attack from start to finish. Actual guilt or innocence does not concern them. Winning the State's case is their only goal and justice takes the backseat. That alone is unfair, unjust, unAmerican, and ungodly. To knowingly ruin the life of an innocent person for an inner office "high five" is a moral crime far beyond that which any Defendant might be suspected. This is most certainly not Justice. "Liberty and Justice for all" is the law of the land that gives us all the hope of fair treatment under the law. It gives us all respect for public office. Operating any public office in a manner that commands only fear from its subjects and cares not for its citizen's respect will eventually receive the same violent malice, that it has dealt to its people. They are now simply reaping what they have sown.

Most Sincerely, Kaufman County Resident, Bob Miller

At the habeas corpus hearing, Kaufman County Deputy Sheriff Joey Cagle testified he investigated the above post. He testified it was sent to twenty different news media sites and that he interpreted it as a threat to Kaufman County Assistant District Attorney Daniel Floyd. The posting was made during the time Kaufman County law enforcement officers were investigating the murders of Michael McClelland, the Kaufman County District Attorney, McClelland's wife Cynthia, and Assistant District Attorney Mark Hasse. Cagle was present when two Texas Rangers interviewed Floyd. Cagle testified Floyd was "in fear of his life," and officers provided Floyd protection at his office and his home.

Cagle testified he traced the address of the computer used to post the alleged Facebook threat to appellant's residence in Hunt County. Cagle and Texas Rangers went to appellant's residence, arrested him, and executed a search warrant on his residence. Cagle transported appellant to the Kaufman County Law Enforcement Center, where Cagle conducted a videotaped interview with appellant. During the interview, appellant was asked what he would say to Floyd if Floyd was in the room with them. Appellant stated he would tell Floyd "he should hide . . . he should dig a hole someplace and hide," and that Floyd was "probably the next to perish." Appellant insisted he wrote the Facebook post as a warning and not as a threat to Floyd. Portions of the interview were played to the trial court. Cagle testified that at the time of appellant's arrest on the terroristic threat and obstruction or retaliation charges, appellant was out on bond on a felony DWI offense; Floyd was the prosecutor in that case. Cagle testified he believed appellant was attempting to affect the outcome of his DWI case by making Floyd either quit or "take it easier on people he was prosecuting."

LaShonda Taylor, an attorney with the Kaufman County Public Defender's Office, testified she was appointed to represent appellant on the felony DWI case on July 27, 2012. She filed a motion to withdraw on April 12, 2013, after appellant was arrested on the terroristic threat charge. The motion was granted by written order on April 24, 2013. Taylor testified she withdrew from representing appellant due to a conflict of interest that would arise by her being called as a witness in this case. Taylor testified appellant did appear in court on the felony DWI charge whenever he was required, and he had a prior probation that he successfully completed.

Appellant's wife, Maurine Miller, testified she and appellant had been married for eighteen years and had lived in Terrell for seventeen years. They lived in a "metal building and on a bus parked on five acres" of land that was deeded to appellant by his mother. Maurine

testified that their monthly expenses included a $900 payment to appellant's mother for living on the property and to pay the phone bill that was in the mother's name; $200 to $300 for groceries; $200 for electricity; $40 for water; $50 for Internet usage; $30 for auto insurance; $150 for credit card; and $70 for medications not covered by Medicare. They also paid $140 per quarter for term life insurance. Maurine testified their monthly income included a $1,206 Social Security disability payment to appellant as a result of his heart condition and being diabetic, and $656 she received in Social Security disability payments for their sixteen-year-old son, whom she homeschooled. They also received $115 in food stamps each month. She also testified they owned personal household items, several junk cars that were parked on the property, a 1999 Suburban, and a bank account with $130 deposited. Maurine testified she contacted twelve different bail bondsmen, but most were not approved to post a $1 million bond. One bondsman wanted $100,000 and another wanted $80,000 to post the bond.

On cross-examination, Maurine testified appellant is the owner of the five acres on which they live, and she was aware that in 2012, the assessed value for the land and improvements was $102,220. Maurine testified the 2012 valuation was not correct, and she would value the property at $60,000. Maurine further testified she did not know why the property is listed as having no mortgage; she has not tried to sell any of the acreage; she does not have any kind of disability or health condition; and she could get a job if she wanted.

At the conclusion of the hearing, the trial court reduced the bail to $200,000 on the terroristic threat charge and set bail on the obstruction or retaliation charge at $50,000.

APPLICABLE LAW

We review the trial court's denial of a bond reduction request under an abuse of discretion standard. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.]

-5-

1981); *see also* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2011).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, or whether the act was arbitrary or unreasonable.  *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  Merely because a trial court decides a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  *Id.*

The primary purpose of an appearance bond is to secure the presence of a defendant at trial on the offense charged.  *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977).  In determining the amount of bail to set, the trial court is guided by the following rules: (1) the bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with; (2) the power to require bail is not to be so used as to make it an instrument of oppression; (3) the nature of the offense and the circumstances under which it was committed are to be considered; (4) the ability to make bail is to be considered; and (5) the future safety of a victim of the alleged offense and the community may be considered.  TEX. CODE CRIM. PROC. ANN. art. 17.15; *see also Ex parte Welch*, 729 S.W.2d 306, 309 (Tex. App.—Dallas 1987, no pet.).  Relevant facts to be considered in determining the amount of bond include the accused's work record; family and community ties; length of residency; previous criminal record; conformity with the conditions of any previous bond; the existence of outstanding bonds; any aggravating circumstances alleged to have been involved in the charged offense; and the range of punishment for the charged offense.  *Ex parte Rubac*, 611 S.W.2d at 849–50.

The person seeking the reduction has the burden of demonstrating the bail is excessive. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).  Although the ability or inability of the accused to make bail is a factor to be considered, that factor alone

does not control the amount of bail. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980).

## DISCUSSION

Appellant contends the bond amounts are excessive. He asserts the Facebook post was not a threat toward Floyd; rather, it was an exercise of appellant's right to free speech guaranteed by the United States Constitution. Appellant argues the bond amounts should be the same in both cases because they arise from the same set of facts. Appellant further asserts that even if both bonds are the same amount, $50,000 is still excessive and his bail should be reduced to $10,000 in each case. The State responds that the trial court acted within its discretion in setting appellant's bond amounts.

Appellant is charged with terroristic threat and obstruction or retaliation, each of which is a third-degree felony offense. *See* TEX. PENAL CODE ANN. §§ 22.07(a)(6), (e); 36.06(a)(1)(A), (c) (West 2011 & Supp. 2012). If the enhancement paragraph is found to be true, the punishment range will be increased to that of a second-degree felony, which is imprisonment for two to twenty years and an optional fine not to exceed $10,000. Appellant was already on bond for a pending third-degree felony offense at the time he was charged with these new offenses. Given the serious nature of these offenses and the potential punishment involved, the trial court could properly have concluded the amount of the bond was reasonable.

Moreover, at the bond hearing, appellant's wife testified to their income, living expenses, and inability to make bond. However, appellant introduced no evidence to support his wife's claim that he was unable to make the bond or that he had made any efforts himself to secure any bond that was denied. While the ability or inability of the accused to make bail is a factor to be considered, that factor alone does not control the amount of bail. *See Ex parte Charlesworth*,

600 S.W.2d at 317. Finally, the trial court heard testimony regarding the charges in this case, appellant's statements to the officers during his videotaped interview, and appellant's pending felony charge and prior criminal record.

After reviewing the record, we cannot conclude the trial court abused its discretion—that it acted without reference to any guiding rules or principles, or acted arbitrarily or unreasonably—in setting the respective bails at $200,000 and $50,000. *See Montgomery*, 810 S.W.2d at 380; *Ex parte Welch*, 729 S.W.2d at 309; *Ex parte Scott*, 122 S.W.3d 866, 868 (Tex. App.—Fort Worth 2003, no pet.). We resolve appellant's sole issue against him.

We affirm the trial court's order.

/s/Jim Moseley
JIM MOSELEY
JUSTICE

PUBLISH
TEX. R. APP. P. 47
130820F.P05

-8-



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE ROBERT ALLAN MILLER

No. 05-13-00820-CR

Appeal from the 422nd Judicial District
Court of Kaufman County, Texas
(Tr.Ct.No. 88341-422).
Opinion delivered by Justice Moseley,
Justices Myers and Evans participating.

Based on the Court's opinion of this date, the trial court's order is **AFFIRMED**.

Judgment entered September 24, 2013.

/s/ Jim Moseley
JIM MOSELEY
JUSTICE