**AFFIRM; and Opinion Filed July 8, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00325-CR

### EX PARTE ZAVIER COMMINEY

On Appeal from the 292nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. WX18-90138-V

# MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Brown

Zavier Comminey appeals the trial court's order denying relief on his pretrial application for writ of habeas corpus seeking a reduction in bail. In a single issue, appellant contends the trial court abused its discretion in denying his writ application because the bond assessed is excessive, oppressive, and violates his rights under the constitutions of the United States and of Texas and the code of criminal procedure. We affirm the trial court's order.

BACKGROUND

The victim was shot multiple times in the front and back in a gas station parking lot in the early morning hours of May 26, 2018. Before losing consciousness, the victim told responding police officers that "Cartier" had shot him. The officer's recorded the victim's statement on their bodycams. The victim died on May 29, 2018. After the police identified appellant as "Cartier," he was arrested in Las Vegas, Nevada and subsequently indicted for murder. Appellant has been jailed continuously since September 20, 2018 on $250,000 bond. The trial court has twice refused

to lower appellant's bail in a formal bond hearing and an informal discussion. Appellant filed the current writ application to challenge the amount of bail as excessive.

Appellant's writ application alleged he is a resident of Dallas, Texas, he has no prior felony convictions and no other pending charges. Appellant asserted he is not a flight risk and, while planning to travel to Nevada to visit family, he offered to surrender to Dallas police if they obtained a warrant for his arrest. Appellant conceded he has not been found indigent, but he alleged he is indigent for purposes of bail, cannot post the excessive bail, and the facts of the offense do not warrant the high bond. Appellant cited a number of older cases holding bonds excessive as examples and he pointed out that Dallas County's bail practices are the subject of a federal lawsuit.

The trial court conducted a hearing on appellant's writ application. During the hearing, appellant's long-time girlfriend, Alissa Williamson, testified that she was twenty-five years old and has been dating appellant for five-or-six years. At the time of his arrest, she and appellant were living in Las Vegas, Nevada where they had moved to help appellant's uncle who was suffering from colon cancer. Williamson testified she had been renting a house in Las Vegas since July 2018. Williamson testified appellant's family members own a house in Las Vegas. Prior to living in Las Vegas, the couple had resided in Plano, Texas for three years. The couple has lived in Dallas, Texas before moving to Plano.

Williamson testified she had paid for appellant's counsel with help from family and friends. She testified that neither she nor appellant could come up with $250,000 to pay the bond. Williamson admitted she had lived at "a bunch of addresses in the past," but was presently residing in a house in Cedar Hill, Texas where appellant would live with her if he was released.

Williamson admitted appellant had previous arrests in Oklahoma City and Fort Bend County, Texas. She testified appellant had been found "not guilty" in the Oklahoma City case and the Fort Bend County case was for misdemeanor marijuana possession. She remembered appellant

having trouble on his bond during a 2015 arrest in Dallas, but the trial court had reinstated his bond because of issues with the battery in his leg monitor. Williamson testified appellant has always shown up for court and present counsel has represented him before. Williamson testified she works in "a gentleman's club" in Dallas and that she was working in Denver, Colorado in September 2018. Williamson testified she drives a Mercedes C300 and she agreed with the prosecutor's estimate that she "had" at least four Mercedes vehicles in the past.

Dallas police detective Patty Belew testified she worked on the present case briefly until the victim died and the case was passed to the homicide division. Belew spoke to the victim's sister who did not know appellant's true name but gave Belew the social media names "Cartier Davis" and "Cartier LaFlair." The victim's sister told Belew she was afraid because of threats that were made on social media, but she did not tell Belew who made the threats. Belew was not aware of appellant threatening anyone. Belew called appellant's counsel looking for "Cartier Davis." Appellant was not arrested until three months after the murder.

Detective Jacob White testified appellant was arrested by United States Marshalls. White was not told appellant resisted arrest and assumes he did not. White was also not aware of appellant threatening any witnesses.

The State admitted into evidence five photographs White had printed off after reviewing appellant's Instagram account. Three of the photographs were posted on July 17, 2018. In one of the three July 17, 2018 photographs, a man White identifies as appellant is wearing a gold necklace that spells out the name "Cartier" with a caption that reads "Bal Harbour blowin big BANDZ in the mall, bodies droppin ev'ryday WE still standing tall." The location data indicates it was taken at Bal Harbour Shopping Mall by an Instagram user named "icewatercarti." White testified he had learned Bal Harbour is "a luxury high-end shopping mall in Miami." A second July 17, 2018 photograph, also posted by "icewatercarti," depicts a high-rise building with the caption, "I live

the life, eatin crab, watchin ladies shake it up all night." The Instagram data with the photograph identifies the location as "23 Biscayne Bay-New Miami Condos." The third Instagram photograph posted on July 17, 2018 depicts a man White identifies as appellant wearing gold jewelry holding a liquor bottle and smoking a cigar. There is no Instagram user data given with that photograph. The other two photographs are taken on different dates. One depict two large stacks of cash with a one hundred dollar bill visible on the top of one stack and a twenty-dollar bill visible on top of the other stack. The photograph bears the caption, "You wish" and was posted by "icewatercarti." The final photograph, posted by a user named "San Pablo Escobar," depicts a man wearing gold jewelry while leaning on a Mercedes. The caption to the photograph identifies the subject as "Cartier LaFlair." White identified appellant as the person in the photograph.

White admitted he did not know if appellant owned property in Miami, and appellant did not appear in either the condo photograph or the photograph of the cash. White admitted the cash photograph and its "You wish" caption could have been sent to appellant from someone else. White could not recall if appellant had any felony record.

White testified appellant had used a credit card on May 20, 2018 to purchase a plane ticket to travel from Las Vegas to Dallas on May 22, 2018. The victim was shot at 2:45 a.m. on May 26, 2019. Appellant used cash to purchase a return ticket to Las Vegas at 5:57 a.m. White recalled the ticket was around $500 and required appellant to have a layover in Arizona rather than being a direct flight. White conceded that appellant was arrested near his home in Las Vegas.

White testified he had identified appellant as Cartier LaFlair. White could not remember the victim's exact words which were recorded on an officer's bodycam video, but White believed the victim had said "Cartier" or "Cartier Davis" had shot him and had identified "Cartier LaFlair" as the assailant's Instagram name.

The State also introduced into evidence the transcript of the September 28, 2018 hearing the trial court held on appellant's bond. During the hearing, Detective White had testified nineteen shell casings were recovered from the crime scene and all appeared to have been fired by the same caliber weapon. When appellant departed from Dallas after the murder, he paid $516 for the plane ticket back to Las Vegas. White testified appellant had been arrested previously in Texas, Oklahoma, Washington, California, and Nevada. The arrest records showed appellant had lived at several different addresses. After appellant was arrested, White traveled to Las Vegas to interview appellant. During the interview, appellant told White that he lived in California. White testified the house where appellant was staying in Las Vegas was valued at $800,000 and the monthly rent was $3,500. White admitted that appellant did not own the house. Appellant's counsel asked White if he was aware that counsel had told Detective Belew that if she obtained a warrant, counsel would surrender appellant. White did not recall Belew telling him that. Richard Duggan, a criminal investigator for the Dallas County District Attorney, testified there was no record of appellant ever being employed in Texas.

Appellant took the stand during the September bond hearing and denied being able to post a $250,000 bond. Appellant testified he had no job, was not making any money, and had a place to stay in Dallas if he was released on bond. He testified his family would help him while he was on bond. Appellant denied knowing what "bands" meant. After appellant testified, the State recalled White to testify about recordings he had listened to of appellant's jail calls. According to White, on the calls appellant had used the term "bands" while apparently telling an associate to move a large amount of money and give some to appellant's attorney.

In addition to the September bond hearing, the trial court also noted on the record that it recalled having an informal discussion off the record about appellant's bond. The trial court refused to reduce the $250,000 initially set.

–5–

STANDARD OF REVIEW

An applicant for habeas corpus relief must prove the applicant's claims by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In reviewing the trial court's order, we view the facts in the light most favorable to the trial court's ruling, and we uphold the ruling absent an abuse of discretion. *Id*. The trial court, as fact finder at the writ hearing, is the exclusive judge of witness credibility. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We afford almost total deference to a trial court's factual findings when those findings are based upon credibility and demeanor. *Id*. If, however, the trial court's determinations are questions of law, or else are mixed questions of law and fact that do not turn on an evaluation of witnesses' credibility and demeanor, then we owe no deference to the trial court's determinations and review them *de novo*. *State v. Ambrose*, 487 S.W.3d 587, 596–97 (Tex. Crim. App. 2016).

In a habeas challenge to the amount of bail, it is the accused's burden of proof to show that the bail set by the trial court is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981). We review the trial court's determination for an abuse of discretion. *See id*. at 850; *Ex parte Miller*, 442 S.W.3d 478, 481 (Tex. App.—Dallas 2013, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or if its actions are arbitrary or unreasonable. *Miller*, 442 S.W.3d at 481. It does not constitute an abuse of discretion for the trial court merely to decide a matter within its discretion in a different manner than the appellate court would under similar circumstances. *Id*.

ANALYSIS

Appellant raises three contentions for reducing his bail. First, appellant contends his bond is too high when considered in light of the purpose of bail and the factors a court must consider in setting bail. Second, appellant contends the record shows he is not a flight risk. Finally, appellant

contends $250,000 bail is grossly above the bail required in comparable cases. We consider each

argument in turn.

The primary purpose of a bond is to secure the accused's presence at trial. *Ex parte*

*Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). The code of criminal procedure provides:

> The amount of bail to be required in any case is to be regulated by the court,
> judge, magistrate or officer taking the bail; they are to be governed in the exercise
> of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the
> undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of
> oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed
> are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this
> point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be
> considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015).

In determining a reasonable bail, courts may also consider an accused's work record,

family and community ties, length of residency, prior criminal record, conformity with previous

bond conditions as well as the existence of any other bonds, any aggravating circumstances of the

charged offense, and the punishment range for the charged offense. *See Rubac*, 611 S.W.2d at

849–50; *Miller*, 442 S.W.3d at 482.

Appellant contends that an analysis of these factors shows the $250,000 bail is excessive,

oppressive, or both. Appellant points out that he has not bonded out of jail and no evidence before

the trial court shows he has the resources to make bail. He and Alissa Williamson both testified

he lacked the resources to make bail at the current level. Appellant contends he has long-term ties

to the community because he and Williamson lived in Plano for years, had only recently moved to

–7–

Las Vegas, and Williamson works and maintains a home in the Dallas area where appellant would live if he was released. Appellant further contends there is no evidence he has violated prior bond conditions or that he has outstanding bonds, and Williamson testified he has always showed up for his court appearances. Although the victim's sister told Detective Belew that she had received threats over social media and was afraid, both Belew and White testified that they were unaware of appellant making any threats against the victim's sister. Appellant concedes that some of the factors "cut both ways." There was testimony that appellant had no work history in Texas but such testimony also supports appellant's claim that he has no resources to post a high bond. While appellant has been arrested several times, the evidence shows he has always appeared for court and has never had his bond revoked. The evidence shows he went to trial in Oklahoma for assaulting a peace officer and was acquitted. Finally, appellant concedes that while murder is a serious offense, he contends it grossly exceeds bail in "comparable and even more serious cases." Appellant thus concludes the $250,000 bail is oppressive and should be reduced to $50,000.

Although appellant contends the bond set is oppressively high, he presented scant evidence at either the bond hearing or the writ hearing regarding what amount of bail he could make that would be sufficient to assure his appearance without being oppressive. Both appellant and Williamson testified that appellant could not make the $250,000 bond. Appellant further testified that he has no job and was not making any money, but could rely upon family members. Williamson testified appellant would live with her in her home in Cedar Hill. However, the evidence also showed at the time of his arrest appellant was living in a home leased for $3,500 per month, had just returned from a trip to Miami where he bragged on social media about living a life of luxury, his live-in girlfriend was driving her fourth Mercedes vehicle, and appellant was overheard on a jail call discussing moving "bands" of money. Although Williamson testified she paid for appellant's attorney, the evidence shows appellant has an ongoing relationship with

retained counsel who has represented him in multiple prosecutions including cases in Dallas and Oklahoma, and who traveled to Las Vegas to meet with appellant when appellant was arrested.

The nature and circumstances of the offense appellant is charged with are particularly callous. The victim was shot multiple times in both the front and the back and left to die on a parking lot. Because none of the State's witnesses could testify that appellant had threatened the victim's sister, we agree that there is no evidence appellant presents a danger to the community beyond the facts and circumstances of the murder itself.

Turning to the other factors, although appellant and Williamson resided in Plano and Dallas for three years and appellant claims long-term ties to the community, he did not prove any continuing ties to the area. To the contrary, the evidence shows appellant had moved from the Dallas area, his family lives in Las Vegas, and although he was living in a leased home in Las Vegas, he told police that he lived in California. Without hours of the shooting, appellant was boarding a plane to return to Las Vegas. Williamson testified that she was working in Denver in September 2018. Although the State did not introduce evidence of an extensive record of criminal convictions, White testified his research showed appellant had been charged with offenses in five different states suggesting appellant travels extensively. Appellant has no work history in Texas. There is evidence that appellant has always shown up for court in his previous cases and has not had his bonds revoked, but there is no evidence that appellant has been charged with such a serious offense with the possibility of a life sentence, and where the evidence against appellant would include a videotaped accusation of his guilt by the dying victim. We are unpersuaded that the trial court erred in its application of the factors to consider in setting bail.

Turning to appellant's second argument, appellant takes issue with the State's effort to paint him as a flight risk because he departed for Las Vegas soon after the murder occurred. Although not conclusive on the subject, we cannot conclude the State's assertion was "cynically

disingenuous" as appellant suggests, given the seemingly hurried circumstances of his departure. The timing of appellant's departure shortly after the murder, the purchase of an expensive ticket with cash, accepting a route that required a layover instead of a direct flight, all suggests appellant wanted to flee the scene of the crime. Given the other factors already discussed—appellant's residency in Las Vegas, his lack of ties to the Dallas area, his status as a frequent traveler, the severity of the offense, the potential lengthy punishment if convicted, and his apparent access to substantial resources despite having no work history–we cannot conclude appellant has shown he is not a flight risk.

We turn finally to appellant's contention that $250,000 bail grossly exceeds the amount of bail in comparable cases. Appellant cites to a long list of mostly older cases in which bail was set or reduced at lower amounts than the amount in this case. Appellant does not identify any particular case that is highly comparable to this one on its fairly unique facts. We agree with appellant that, in the right case, a $50,000 bail might be appropriate for an accused charged with murder. Appellant has not, however, shown that his bail should be set so low. We note that there are many authorities where comparable or even higher bail has been set for murder offenses. *See*, *e.g.*, *Jobe v. State*, 482 S.W.3d 300, 304 (Tex. App.—Eastland 2016, pet. ref'd) (affirming as reasonable $1,000,000 bail in capital murder case); *Ex parte Ragston*, 422 S.W.3d 904, 908–09 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (affirming $250,000 bail in capital murder case); *Milner v. State*, 263 S.W.3d 146, 148–51 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (concluding $500,00 bail for murder and attempted murder offenses was reasonable); *Richardson v. State*, 181 S.W.3d 756, 759–60 (Tex. App.—Waco 2005, no pet.) (no abuse of discretion in refusing to reduce $200,000 bail for murder defendant); *Ex parte Davis*, 147 S.W.3d 546, 553 (Tex. App. —Waco 2004, no pet.) (reducing $1,000,000 pretrial bail for two murder defendants to $500,000 and $750,000).

The record shows the State presented evidence bearing on the rules for setting bail set forth in article 17.15 and in *Rubac*. There is no evidence that the trial court failed to consider and evaluate each rule and factor in reaching its determination. Given the charge against appellant, the evidence suggesting he has substantial financial resources at his disposal undermining his assertion that he cannot make bail, and his lack of ongoing ties to the Dallas area, we cannot conclude the trial court abused its discretion in denying relief and leaving pretrial bail set at $250,000. *See Rubac*, 611 S.W.2d at 849–50; *Miller*, 442 S.W.3d at 482.

We overrule appellant's sole issue on appeal.

We affirm the trial court's order denying relief on appellant's pretrial application for writ of habeas corpus.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

190325F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

EX PARTE ZAVIER COMMINEY

No. 05-19-00325-CR

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. WX18-90138-V.
Opinion delivered by Justice Brown.
Justices Bridges and Nowell participating.

Based on the Court's opinion of this date, the trial court's order denying relief on appellant's pretrial application for writ of habeas corpus is **AFFIRMED**.

Judgment entered this 8th day of July, 2019.