**Affirmed and Opinion Filed November 21, 2022**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00510-CR

### EX PARTE: LONNIE KOMAHCHEET

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. WX2291158-Q**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Myers

Lonnie Komahcheet appeals the trial court's order denying him relief sought by his pretrial application for habeas corpus seeking a reduction of his bond. In a single issue, he argues the trial court abused its discretion by refusing to further reduce the bond because the remaining amount is unreasonable and excessive. We affirm.

### Discussion

In his only issue, appellant contends he presented substantial evidence that the bond was excessive; he posed no flight risk; he was a working student; had ties to the community; and has no criminal record. He also argues the State did not rebut

this evidence and that, accordingly, the bond amount of $200,000 was excessive and oppressive and should be reversed by this Court.

We review the trial court's denial of a bond reduction request under an abuse of discretion standard. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Miller*, 442 S.W.3d 478, 481 (Tex. App.—Dallas 2013, no pet.); *see also* TEX. CODE CRIM. PROC. art. 17.15. To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, or whether the act was arbitrary or unreasonable. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990); *Miller*, 442 S.W.3d at 281. Merely because a trial court decides a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Montgomery*, 810 S.W.3d at 380; *Miller*, 442 S.W.3d at 281.

The primary purpose of an appearance bond is to secure the presence of a defendant at trial on the offense charged. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Miller*, 442 S.W.3d at 282. In determining the amount of bail to set, the trial court is guided by the following rules: (1) the bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with; (2) the power to require bail is not to be so used as to make it an instrument of oppression; (3) the nature of the offense and the circumstances under which it was committed are to be considered; (4) the ability to make bail is to be considered; and

(5) the future safety of a victim of the alleged offense and the community may be considered. TEX. CODE CRIM. PROC. art. 17.15; *see also Ex parte Welch*, 729 S.W.2d 306, 309 (Tex. App.—Dallas 1987, no pet.). Relevant facts to be considered in determining the amount of bond include the accused's work record; family and community ties; length of residency; previous criminal record; conformity with the conditions of any previous bond; the existence of outstanding bonds; any aggravating circumstances alleged to have been involved in the charged offense; and the range of punishment for the charged offense. *Ex parte Rubac*, 611 S.W.2d at 849–50.

The person seeking the reduction has the burden of demonstrating the bail is excessive. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980); *Miller*, 442 S.W.3d at 281. Although the ability or inability of the accused to make bail is a factor to be considered, that factor alone does not control the amount of bail. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980); *Miller*, 442 S.W.3d at 281.

Appellant has been charged with intoxication manslaughter, a second-degree felony with a maximum penalty of twenty years in prison. *See* TEX. PENAL CODE §§ 12.33, 49.08. Appellant admitted at the scene to having smoked marijuana and drinking alcohol prior to the collision, which resulted in the death of the complainant, Lesley Mandujana. The fatality occurred on April 22, 2022 and appellant's bond was originally set at $250,000 on April 23, 2022. Two days later,

on April 25, he filed his pre-trial application for writ of habeas corpus seeking a bond reduction and a hearing was held the following day. At the time of the hearing, the investigation into the collision was ongoing and the results of appellant's blood test were not available.

The probable cause affidavit that accompanied appellant's warrant of arrest indicates that he ran a red light and struck a car, a Ford Fiesta, being driven by Lesley Mandujana, causing it to strike a third vehicle driven by Emily Zepeda. Mandujana was pronounced dead at the scene.

City of Garland paramedic Jeremy Sanford examined appellant at the scene of the collision. He performed a field assessment on appellant and determined that he was alert and oriented. Appellant complained of shoulder pain from his seatbelt but declined to be treated further or taken to the hospital. While assessing appellant, Sanford smelled alcohol on appellant's breath and alerted the officers at the scene. One of the officers at the scene was a certified instructor in Standard Field Sobriety Testing (SFST). He performed the Horizontal Gaze Nystagmus test on appellant, observing six out of six possible clues indicating intoxication. The officer was unable to conduct further SFST because appellant's family arrived at the scene and told him not to cooperate with the police.

Appellant was placed in a police car, away from his family, read his *Miranda* rights, and then agreed to talk to the officer. Appellant was nineteen years of age at the time of the collision. Appellant initially denied consuming any alcohol, but he

admitted to having smoked just enough marijuana earlier that day "to get high." When confronted with the smell of alcohol on his breath, appellant admitted to having "had a beer." Appellant refused to provide a breath sample at the scene and subsequently refused to voluntarily provide a blood sample. Two open cans of Michelob Ultra Organic Seltzer were found in appellant's car at the scene of the crash. The inside of the vehicle had a strong odor of an alcoholic beverage.

At the April 26th hearing, appellant's counsel pointed out that the probable cause affidavit notes that a bystander at the scene reported to one of the officers that appellant "seemed like he wasn't all there" and may have had a head injury. Counsel then called Guadalupe Rodriguez, appellant's mother, who testified that appellant has never been arrested for anything or been in trouble with the law before. He had graduated from high school, was living with her and his family, and attending classes at community college. Appellant was working for Door Dash and had been working prior to that for Home Depot until he was laid off during the COVID-19 pandemic. Rodriguez testified that appellant was a "home body" who mostly stayed home and did not have a drug or alcohol problem. Rodriguez stated that her yearly income is "over $100,000" and she has a mortgage payment of "almost" $2,000 as well as a car payment. She testified that she did not have enough money to pay a bond company $25,000 (ten percent of $250,000) and agreed there was "no way" she could make the bond as current set. She testified that she told appellant not to talk to the police at the scene of the accident.

Appellant's counsel argued that the facts surrounding the collision were "nebulous at best"; appellant might not be at fault; the determination that appellant had run a red light was not proven by evidence; he might have had a head injury; and he was not a danger to the community. Counsel requested that the bond amount be lowered from $250,000 to $25,000. The State opposed lowering the bond amount to $25,000 and argued the safety of the community should be considered, taking into account that appellant was underage and admitted having been drinking alcohol and smoking marijuana prior to the collision.

The trial court found that appellant was 19, had not been in trouble before, and had ties to the community. However, the court was troubled by the nature of the offense which resulted in someone's death, and by appellant's drug and alcohol use. Out of concerns for the safety of the community, the court only partially granted appellant's writ and reduced the bond to $200,000.

At a reconsideration hearing held on May 3, 2022, defense counsel called Jeremy Sanford and questioned him as to whether he had been informed at the scene that someone thought appellant might have a head injury. Sanford testified that he was not told that, but the information would not have changed the way he assessed appellant at the scene, and that appellant was alert and oriented. Counsel also called Officer Thomas Griffith, who had written the probable cause affidavit, and asked him if he had spoken to the bystander who thought appellant might have a head injury. Officer Griffith said he had not.

Appellant's mother also testified, and her testimony was largely the same as it had been at the April 26th hearing. She testified that she did not think she could pay a $25,000 bond, nor could she come up with $2,500 for a bond. On cross-examination she testified that she did not know where appellant had been going prior to the collision and did not know where he obtained the alcohol and marijuana that day. The trial court found there was no reason to change the April 26th bond order and that it would remain in place.

Turning to our analysis, the $200,000 bond set by the trial court, although on the higher end of the range, is within the range of bond amounts approved for other cases involving comparable offense. *E.g.*, *Lawhon v. State*, Nos. 03-15-00265-CR, 03-15-00277-CR, 03-15-00288-CR, 2015 WL 7424763 (Tex. App.—Austin Nov. 20, 2015, no pet.) (mem. op., not esignated for publication) (approving $150,000 bond for each of two manslaughter charges); *Ex parte Rincon*, No. 04-13-0071-CR, 2014 WL 2443870 (Tex. App.—San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication) (approving $100,000 bond for intoxication manslaughter charge); *Ex parte Jozwiak*, No. 05-04-01570-CR, 2005 WL 110357 (Tex. App.—Dallas Jan. 20, 2005, no pet.) (not designated for publication) (approving $200,000 bond for each of ten manslaughter charges); *Ex parte Leonides*, No. 03-01-00641-CR, 2002 WL 189057 (Tex. App.—Austin Feb. 7, 2002, no pet.) (not designated for publication) (approving bail set at $175,000 for intoxication manslaughter charge).

As for the accused's ability to make bail, appellant did not testify regarding his ability to make bail. He relied instead on testimony from his mother, who did not provide any testimony regarding appellant's income or savings, if any. Additionally, there is testimony from which the court could reasonably infer appellant was employed and, thus, had at least some income. Without more specific and detailed evidence related to appellant's ability or inability to make bail, we cannot say the trial court would have abused its discretion in finding this factor did not favor a greater reduction in bail. *E.g*., *Ex parte Coleman*, No. 09-17-00484-CR, 2018 WL 1415520, at *2 (Tex. App.—Beaumont Mar. 21, 2018, no pet.) (mem. op., not designated for publication) ("Coleman presented no testimonial or documentary evidence regarding his assets and financial resources."); *Lawhon*, 2015 WL 7424763, at *2 (noting Lawhorn did not testify regarding his ability to make bail, and relied instead on the testimony of his mother, who did not provide any testimony regarding Lawhorn's income or savings); *Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (noting ability to make bail factor will not favor bond reduction "when the defendant makes vague references to inability to make bond without detailing his specific assets and financial resources.").

In claiming the amount of bail in this case is oppressively high, appellant cites cases involving different offenses in which the reviewing courts reduced the bail amount after finding it was excessive. There are, however, significant factual

differences between these cases and the case before us. *E.g.*, *Ludwig v. State*, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991) (bond reduced from $1,000,000 to $50,000 in capital murder case where circumstances of offenses not developed at hearing); *In re Estrada*, 398 S.W.3d 723, 727, 2008 WL 4958370 (Tex. App.—San Antonio 2008, no pet.) (bond reduced from $1,000,000 to $600,000 in capital murder case); *Ex parte Durst*, 148 S.W.3d 496, 501 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (bail reduced from $1,000,000,000 per case to $150,000 per case, or a total of $450,000, for appellant charged with third-degree felonies of bail-jumping and tampering with evidence); *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (bail lowered from $8,000,000 to $500,000 in capital murder case); *Ex parte Milburn*, 8 S.W.3d 422, 427 (Tex. App.—Amarillo 1999, no pet.) (bond reduced to $100,000 from $2,000,000 in case involving intentional and knowing death of a child by blunt force; State presented no evidence concerning safety of community if appellant released on bail); *Ex parte McDonald*, 852 S.W.2d 730, 735–36 (Tex. App.—San Antonio 1993, no pet.) (bond reduced from $1,000,000 to $75,000 in capital murder case where facts surrounding offense not developed at hearing). We find nothing in the cases cited by appellant that compel us to conclude the trial court abused its discretion, given the facts and circumstances presented here. Moreover, there is nothing in the record to indicate the trial court set bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial. *E.g., Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987,

no writ). On the contrary, the court reduced the amount of bail by $50,000, which is consistent with an attempt to make bail more affordable for appellant.

Regarding the future safety of the victim and the community, complainant Lesley Mandujana was killed in the collision, and no evidence was presented regarding the future safety of other victims. As for the safety of the community, the offense for which appellant is charged involved a fatality, and appellant's admitted drug use and the open containers of alcohol found in the vehicle driven by appellant also factored into the court's determination. Given the offense for which appellant was charged, the trial court could have reasonably concluded that appellant posed at least some risk of safety to the community.

To summarize, although some of the factors arguably support a greater reduction in the bail amount than what the court authorized, others do not. The burden was on appellant to prove bail was excessive, and the trial court did not abuse its discretion in finding appellant failed to satisfy that burden. The record supports that appellant is facing a serious charge that involved the death of an individual; that the amount of bond is within the range of bail amounts approved in other cases; that appellant failed to provide specific and detailed information regarding his ability to make bail; and that he presents at least some risk to the community. Based on the record here, we cannot say the trial court's decision to not reduce bail beyond the specified amount was outside the zone of reasonable disagreement. We therefore overrule appellant's issue.

The trial court's order is affirmed.

/Lana Myers//
LANA MYERS
JUSTICE

220510f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE EX PARTE: LONNIE
KOMAHCHEET

No. 05-22-00510-CR

On Appeal from the 204th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. WX2291158-
Q.
Opinion delivered by Justice Myers.
Justices Pedersen, III and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.

Judgment entered this 21st day of November, 2022.