

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00223-CR

———————————————————

Ex parte Tavion Malik McKinney

---

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC89-CV2024-0997

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I.  Introduction

Appellant Tavion Malik McKinney appeals from the trial court's order denying relief on his pretrial application for writ of habeas corpus seeking a bond reduction. In a single issue, McKinney argues that the trial court abused its discretion by denying his requested relief to reduce the $150,000 bail amount or to reinstate his original $100,000 bond.  Because the bail-setting factors weigh in favor of the trial court's decision to not reduce McKinney's bond, we affirm.

### II.  Background

#### A.    The Charges and the Prior Bail Proceedings

McKinney is accused of sexually assaulting a sixteen-year-old girl.  The victim underwent a sexual-assault nurse exam (SANE) on January 18, 2023, after her mother reported to police that McKinney had sex with the victim on the morning of January 17, 2023.  The affidavit for the arrest warrant avers that during a February 2, 2023 forensic interview with the victim, she

> identified the suspect as Tavion McKinney who is dating her friend that is currently living with them.  The victim stated [that] she doesn't like to get up in the morning[,] and when she woke up on the 17th[,] she turned off her alarm and was just [lying] in her bed.  The victim [s]tated [that] Tavion was [lying] across from her and began to put his hand on her vagina under her shorts and underwear.  The victim stated [that] he continued and then moved on top of her, took off his shorts[,] and moved her shorts and underwear to the side.  The victim stated [that] he then began to have sexual intercourse with her.  The victim stated [that] Tavion did not use a condom and [that] he ejaculated inside of her . . . .

2

The victim stated [that] Tavion got off of her when he thought he heard someone in the [living room].

The victim stated [that] Tavion had tried to kiss her before and [that] she [had] told him "no[.]"

The SANE kit with vaginal swabs from the victim and saliva samples from McKinney were sent to the Department of Public Safety lab. The results showed that the "probability of obtaining this mixture profile if the DNA came from the victim and the suspect is 16.5 octillion times greater than the probability of obtaining the profile if the DNA came from the victim and one unrelated, unknown individual."

McKinney was thereafter arrested and charged with sexual assault. His bond was originally set at $100,000. The bond company required $4,000. With the help of his then girlfriend (who was his ex-girlfriend by the June 6, 2024 hearing on his habeas application), he was able to post bond.

A pretrial hearing was scheduled for March 7, 2024, but McKinney did not appear when the roll was called at 8:30 a.m. At the habeas hearing, he claimed that he had been at United Regional Emergency Center to get a COVID test on the morning of March 7. McKinney said that "every night" he had been waking up in sweats, had a high fever, and was coughing; he believed that he had COVID because he had attended a birthday party at which one of the guests had COVID symptoms. McKinney explained that he wanted to get tested because he was "getting hired for Tyson" and because he "was around other family members that [he] did not want to get sick."

McKinney was asked whether he had attempted to contact the court on the morning of March 7, and he said that he had called the County Clerk around 7:00 a.m. and had spoken to a lady.[1] According to McKinney, the lady in the clerk's office told him that he would need to bring in his paperwork for the COVID test in order to have his hearing rescheduled, but he never presented any kind of documentation because he never got tested.

McKinney said that before calling the clerk's office, he had called his attorney's office and had left a message. Later that morning while McKinney was at United Regional, he spoke to his attorney by phone, and his attorney told him that he would check with the court and get back to him. McKinney went and sat in his car so that he would be ready to leave if his attorney called back and said that he needed to leave. When McKinney's attorney called back,[2] he said that the trial court had revoked McKinney's bond.

McKinney was arrested, and his bond was set at $150,000.

## B. The Habeas Proceeding

McKinney applied for a pretrial writ of habeas corpus and requested that the trial court reduce his bail "to a reasonable amount in order that [he might] be able to obtain release from incarceration pending trial." The trial court held a hearing on

[1]The State noted at the hearing that "the Clerk's Office is not even open at that point in time."

[2]McKinney's attorney told the trial court that he did speak with McKinney on the morning of March 7 but that it was after 8:30 a.m.

4

McKinney's application, and he gave the explanation above regarding why he did not show for the March 7 pretrial hearing. McKinney ultimately admitted that he had gone to United Regional for a COVID test for his job instead of attending his hearing.

McKinney also testified that between the time that he was arrested after his $100,000 bond was revoked and the June 6, 2024 hearing on his bond-reduction application, he had not tried calling bond companies because the jail phones had been on lockdown due to the prisoners' failing nightly inspections. If a bond company wanted ten percent of the bond, McKinney said that he could not post that amount even with the help of his family. He said that although he did not have a bank account or a car, if his bond were $40,000 to $60,000, he could come up with $4,000 to $6,000. On cross-examination, McKinney admitted that he had not spoken with his family about bond money since returning to jail.

McKinney said that he was from Wichita Falls and has family there. His children, mom, dad, stepmom, grandmother, aunts, and cousins also live in Wichita Falls. If he were released, he would stay at his friend's house because she does not have any children living with her.[3]

---

[3]Although the record does not contain McKinney's bond conditions, his statement indicates that one of his bond conditions may have limited his ability to be around children.

With regard to his employment history, McKinney said that he was a lifeguard prior to his arrest.[4]  McKinney said that if he were released pending trial, he had jobs lined up with Tyson, Tower Extrusions, and Vitro Glass Manufacturer.  No one from these companies testified on McKinney's behalf, nor did McKinney offer documents to support any offers of employment.

The trial court admitted into evidence without objection the probable-cause affidavit for the arrest warrant, McKinney's criminal history,[5] jail-incident reports, the order declaring bond forfeiture and the certification that McKinney's name was called, and the laboratory report connecting his DNA to the DNA that had been obtained from the victim.[6]  McKinney's criminal history included a 2017 arrest for the misdemeanor of assault causing bodily injury to a family member.[7]  The jail-incident reports show that McKinney was cited for fighting or inciting a fight on May 13, 2024, and for refusing to follow written or oral directives on May 27, 2024.

---

[4]McKinney was asked by his counsel whether he was working "before [he] got arrested."  The record is not clear as to which arrest McKinney's counsel was referring.

[5]The trial court confirmed on the record that it had reviewed McKinney's public-safety report.

[6]McKinney's counsel admitted to the authenticity of the lab results but objected to the contents because he was awaiting a report from a court-appointed expert who was evaluating the DNA report.

[7]As to the 2017 assault, we note that the criminal history record states that there is no prosecution data available and further lists the disposition as "Misd Class C refer to Arresting Agency for Disposition."

6

After hearing arguments from counsel, the trial court ordered that the bond remain at $150,000. The trial court signed an order denying McKinney's application for bond reduction. This appeal followed.

### III.  Burden for Bail Reduction Not Met

In his sole issue, McKinney contends that the trial court abused its discretion by refusing to reduce his bond, claiming that "it must be in an amount that the record reflects the accused can make in order to effectuate release." As discussed below, that is not the law that governs setting bail. Applying the factors that govern setting bail, we conclude that McKinney did not carry his burden to show that the trial court's ruling constitutes an abuse of discretion.

### A.    Governing Law and Standard of Review

We have previously set forth the law that applies to setting bail and the standard of review that we apply to a ruling on a pretrial application for writ of habeas corpus:

> Bail is excessive if it is "in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." [*Ex parte*] *Hanson*, [No. 02-22-00045-CR], 2022 WL 1496533, at \*1 [(Tex. App.— Fort Worth May 12, 2022, no pet.) (mem. op., not designated for publication)] (quoting *Ex Parte Peyton*, No. 02-16-00029-CR, 2016 WL 2586698, at \*3 (Tex. App.—Fort Worth May 5, 2016) (mem. op., not designated for publication), *pet. dism'd*, No. PD-0677-16, 2017 WL 1089960 (Tex. Crim. App. Mar. 22, 2017) (not designated for publication)). The government's primary interest, and bail's primary purpose, is to provide a reasonable assurance of the defendant's presence at trial. *Id.*; *see* Tex. Code Crim. Proc. Ann. art. 17.01; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977).

In setting bail, a trial court is "governed by the Constitution and the following" statutory guidelines:

1. Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used to make bail an instrument of oppression.

3. The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense: (A) is an offense involving violence as defined by Article 17.03; or (B) involves violence directed against a peace officer.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant . . . shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15(a) (indentation altered). The Court of Criminal Appeals has identified other factors to be considered as well, including the defendant's work record, his family ties, and his length of residency. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel Op.] 1981) (listing many factors reflected in the current version of Article 17.15).

We review a trial court's bail determination for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's decision. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021). We will not disturb the decision if it is within the zone of reasonable disagreement. *Hanson*, 2022 WL 1496533, at *2. The

defendant has the burden to show that it is not within that zone. *Id.*; *see Gomez*, 624 S.W.3d at 576.

*Chavez v. State*, 671 S.W.3d 775, 785 (Tex. App.—Fort Worth 2023, no pet.). Setting bail is a fact-driven determination that must be judged on a case's own unique facts. *Ex parte Sanderson*, No. 02-21-00053-CR, 2021 WL 2843830, at *2–3 (Tex. App.—Fort Worth July 8, 2021, no pet.) (mem. op., not designated for publication) (citing *Ex parte Cook*, No. 02-18-00537-CR, 2019 WL 2323643, at *3 (Tex. App.—Fort Worth May 31, 2019, no pet.) (per curiam) (mem. op., not designated for publication)).

## B.    Analysis[8]

### 1.    Nature of the Offense and Potential Sentence

We begin our analysis with the nature of the offense and the possible sentence because those are the "primary factors" we consider in evaluating a bail decision. *See Rubac*, 611 S.W.2d at 849; *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pets. ref'd). Here, these factors weigh in favor of a reasonably high bail.

McKinney stands charged with sexual assault. *See* Tex. Penal Code Ann. § 22.011(a)(1). If convicted of sexual assault as charged, he faces a possible prison sentence of not more than twenty years or less than two years and a fine up to $10,000. *See id.* § 12.33. Given the seriousness of the charge, the condemning DNA

---

[8]McKinney's brief attaches documents that are not contained in the appellate record. We therefore do not consider them. *See Johnson v. State*, 624 S.W.3d 579, 585 (Tex. Crim. App. 2021) ("An appellate court cannot consider an item that is not a part of the record on appeal."). *See generally* Tex. R. App. P. 34.1 (defining the appellate record as the clerk's record and, if necessary to the appeal, the reporter's record).

results, and the potential of a lengthy prison sentence, there is a heightened interest in securing McKinney's appearance at trial. These factors strongly weigh in favor of the trial court's order.

### 2. Criminal History and Bail Compliance

A court setting bail must also consider "[t]he criminal history record information for the defendant." Tex. Code Crim. Proc. Ann. art. 17.15(a)(6). A defendant's criminal history can suggest that the defendant would be a danger to the public if released on bail. *See Chavez*, 671 S.W.3d at 787 (citing *Hanson*, 2022 WL 1496533, at *4).

McKinney's criminal history shows only one prior arrest, but it was for an assault involving family violence. The habeas record contains no evidence related to the details or circumstances of the misdemeanor offense. But the misdemeanor assault of a family member taken in conjunction with the sexual-assault charge and the jail fight for which McKinney was cited reveals that he has a pattern of assaulting others.

Additionally, McKinney's past behavior while on bail raises a concern. The trial court was required to consider "any instances in which the defendant failed to appear in court following release on bail," Tex. Code Crim. Proc. Ann. art. 17.15(a)(6), and the record demonstrates that McKinney failed to appear at the pretrial hearing on March 7, 2024. McKinney implicitly argues that his failure to appear should be excused because his "adherence to the CDC guidelines for COVID

symptoms reflects that he acted appropriately with respect to generally accepted practices for community safety." He further notes that "because he was following recommendations of the CDC[] and was in communication with the [c]ourt through counsel about his condition, it was an abuse of discretion to revoke his bond." McKinney's argument fails to be persuasive because he admitted that he never submitted to a COVID test on the day of the hearing. He also admitted that he had sought to undergo a COVID test for his job rather than attend his hearing. As with his criminal history, McKinney's failure to appear and his jailhouse infractions do not weigh in his favor.

This factor supports the trial court's order. *See, e.g.*, *Ex parte Komahcheet*, No. 05-22-00510-CR, 2022 WL 17090185, at *1, *4 (Tex. App.—Dallas Nov. 21, 2022, no pet.) (mem. op., not designated for publication) (upholding $200,000 bond for second-degree-felony charge when applicant had no criminal record); *Ex parte Sells*, No. 02-20-00143-CR, 2020 WL 7639574, at *4 (Tex. App.—Fort Worth Dec. 23, 2020, no pet.) (mem. op., not designated for publication) (noting that defendant's prior convictions for failing to appear "are no doubt concerning when considering that the intent of bail is to secure his appearance at trial").

### 3. Safety Risk

The State offered no evidence that the victim or anyone else feared for the victim's safety if McKinney were released. We note that if he were released, his potential jobs would require him to be in the community. The lack of evidence

11

regarding the victim's future safety weighs in favor of a lower bond; however, based on the record before us (i.e., McKinney's prior arrest for bodily assault of a family member and the fight that he engaged in while in jail), the trial court could have reasonably concluded that he posed a danger to the community at large. *See Ex parte Ramirez-Hernandez*, 642 S.W.3d 907, 918 (Tex. App.—San Antonio 2002, no pet.) (concluding similarly). Therefore, this factor weighs neither for nor against a reduction in his bail amount.

### 4. Community Ties, Residency, and Employment Record

McKinney's family ties weigh in his favor and indicate that he is likely to stay in Wichita County. *See Ex parte Taylor*, No. 02-20-00010-CR, 2020 WL 1963788, at *6 (Tex. App.—Fort Worth Apr. 23, 2020, no pet.) (per curiam) (mem. op., not designated for publication) ("The point of looking at a defendant's community and family ties is to assay the likelihood that he will appear for trial."). McKinney agreed that he was from Wichita Falls—though he did not say how long he had lived there—and that his mom, dad, stepmom, grandmother, aunts, cousins, and two children also live in Wichita Falls.

With regard to his employment history, McKinney testified that he had been starting his second year at Castaway Cove as a lifeguard when he was arrested. He claimed that he had three to four jobs lined up if he were released; however, none of his potential employers testified, and the trial court could have viewed this as a self-serving statement. *See Ex parte Fassi*, 388 S.W.3d 881, 888 (Tex. App.—Houston

12

[14th Dist.] 2012, no pet.) ("[T]he habeas court was free to disbelieve appellant's self-serving testimony.").

Although McKinney's employment record is lacking in any long-term connection to Wichita Falls, his residency and family there weigh in favor of a lower bond amount.

### 5. Ability to Make Bail

McKinney testified that he cannot post bond in the amount set by the trial court even with the help of his family. But he later admitted that he had not spoken with his family about bond money since being back in custody and had not tried calling bond companies. *See Sanderson*, 2021 WL 2843830, at *3 (citing *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd), for the proposition that it is incumbent upon the applicant to show that he has made an effort to furnish bail in the amount set); *Ex parte Castellanos*, 420 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted."). Even if we were to assume that McKinney cannot meet the $150,000 bail, that alone is not dispositive. *See Sanderson*, 2021 WL 2843830, at *3. A defendant's simple inability to meet the bail set by the trial court does not automatically render it excessive; to hold otherwise would completely eliminate the trial court's role in setting bond and place the accused "in the unique posture of determining what his bond should be." *Id.* (quoting *Miller*, 631 S.W.2d at 827). This

13

factor does not weigh in favor of lowering bail. *See Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (noting ability-to-make-bail factor will not favor bond reduction "when the defendant makes vague references to inability to make bond without detailing his specific assets and financial resources").

### 6. Sufficient Bail to Assure Appearance But Not Oppress

Nothing in the record indicates that the trial court refused to reduce McKinney's bond amount only for the purpose of oppressing him by keeping him incarcerated, and we have no basis for inferring such a purpose. *See Burns v. State*, No. 05-23-01013-CR, 2024 WL 909840, at *5 (Tex. App.—Dallas Mar. 4, 2024, no pet.) (mem. op., not designated for publication); *Ex parte Dresner*, No. 03-22-00018-CR, 2023 WL 8285108, at *6 (Tex. App.—Austin Dec. 1, 2023, no pet.) (mem. op., not designated for publication). Rather, the record—viewed in the light most favorable to the trial court's ruling—suggests that McKinney's bond was set at a high amount in part because he had failed to show at the pretrial hearing. Moreover, "[c]ourts traditionally set somewhat higher bail in cases involving offenses against children."[9] *Ex parte Flores*, Nos. 12-21-00079-CR, 12-21-00080-CR, 2021 WL 3922919, at *5 (Tex. App.—Tyler Sept. 1, 2021, no pet.) (mem. op., not designated for publication). Further, we note that the bail amount set by the trial court in this case is akin to other cases involving punishment ranges for a second-degree felony.

---

[9]The sexual assault statute defines "child" as "a person younger than 17 years of age." Tex. Penal Code Ann. § 22.011(c)(1). As noted above, the victim was sixteen years old on the day of the offense.

*See, e.g.*, *Komahcheet*, 2022 WL 17090185, at *1, *4 (upholding $200,000 bond for second-degree-felony charge); *Ex parte Miller*, 442 S.W.3d 478, 481–82 (Tex. App.—Dallas 2013, no pet.) (upholding $200,000 bond on charge with an enhancement paragraph that would increase the punishment range to that of a second-degree felony). This factor weighs in favor of finding that the amount of bail was sufficient to secure McKinney's appearance at trial and weighs against a finding that the amount of bail was set for the express purpose of preventing appellant from posting bail.

### 7.    Disposition

McKinney had the burden to show that the amount of bail set is excessive. Having considered the relevant factors (most of which weigh in favor of the trial court's ruling) and considering the record in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused its discretion by declining to lower the bail amount. Accordingly, we overrule McKinney's sole issue.

### IV.  Conclusion

Having overruled McKinney's sole issue, we affirm the trial court's order denying relief on his pretrial application for writ of habeas corpus seeking a bond reduction.

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 24, 2024

15